## PEUGH v. DAVIS.

1. A deed of lands, absolute in form, when executed as security for a loan of money, will in equity be treated as a mortgage; and evidence, written or oral, tending to show the real character of the transaction is admissible.
2. An equity of redemption is so inseparably connected with a mortgage, that it cannot be waived or abandoned by any stipulation of the parties made at the time, even if embodied in the mortgage.
3. A subsequent release of the equity of redemption to the mortgagee must appear by a writing importing in terms a transfer of the mortgagor's interest, or such facts be shown as will estop him from asserting any interest in the premises; and it must be for an adequate consideration.
4. In determining whether a transaction was intended to operate as such release, the fact that the then value of the property was greatly in excess of the amount paid, and of that originally secured, and the fact that the mortgagor retained possession and subsequently enclosed and cultivated the land, are strong circumstances tending to show that a release was not intended.
5. Where a deed, absolute in form, was made as security for a loan, papers thereafter executed, which refer to the transaction as one of purchase will be considered in connection with the deed, and will not be regarded in a court of equity as any more conclusive of a subsequent release than the form of the original instrument was of a sale of the property.

APPEAL from the Supreme Court of the District of Columbia.

This was a suit in equity, brought June 28, 1869, to redeem certain real property in Washington City. The defence consisted in an alleged release of the equity of redemption, to establish which, in addition to the testimony of the parties, the defendant relied principally upon the following papers:—

"Whereas the undersigned, Samuel A. Peugh, of the city of Washington, in the District of Columbia, having heretofore sold and conveyed to Henry S. Davis, of the said city, two certain squares of ground in said city, the same being squares numbered nine hundred and ten (910) and nine hundred and eleven (911) in the said city, the said sale and conveyance having been by the said Peugh made with full assurance and promise of a good and indefeasible title in fee-simple, though the said conveyance contains only a special warranty, the said conveyance to said Davis bearing date on the fourth day of March, A.D. 1857, and being recorded on the seventh day of September, A.D. 1857.

"And whereas the title to the said squares so conveyed as aforesaid to said Davis having been now questioned and disputed, the said Peugh doth now, for himself, his heirs, executors, and adminis-

trators, promise, covenant, and agree to and with the said Henry S. Davis, his heirs and assigns, in the manner following; that is, that he, the said Samuel A. Peugh, and his heirs shall and will warrant and for ever defend the said squares of ground and appurtenances as conveyed, as aforesaid, unto the said Henry S. Davis, his heirs and assigns, from and against the claims of all persons whomsoever.

"And, further, that the said Peugh, and his heirs, executors, and administrators, shall and will pay and refund to said Davis, his heirs or assigns, all and singular the loss, costs, damage, and expenses, including the consideration in said deed or conveyance, which or to which the said Davis, his heirs or assigns, shall lose, incur, pay, or be subject to, by reason of any claim or litigation against or on account of said squares of ground, or either of them.

"And for the full and faithful observance and performance of all the covenants and agreements aforesaid, and for the payment of all the sum or sums of money as therein provided, in the manner prescribed as aforesaid, the said Samuel A. Peugh doth hereby bind himself, his heirs, executors, and administrators, and each and every of them, firmly by these presents.

"In testimony whereof, the said Samuel A. Peugh doth hereto so set his hand and seal on this ninth day of February, in the year of our Lord 1858.

"S. A. PEUGH.    [SEAL.]

"Signed, sealed, and delivered in
  the presence of
   "FRANCIS MOHUN.
   "WM. H. WARD."

"WASHINGTON, D. C., Feb. 9, 1858.

"Received of Henry S. Davis $2,000, the same being in full for the purchase of squares Nos. 910 and 911 in the city of Washington.
"$2,000.          S. A. PEUGH."

The other facts sufficiently appear in the opinion of the court.

The decree at special term dismissing the bill was at general term affirmed; and the complainant appealed to this court.

*Mr. Richard T. Merrick* and *Mr. T. T. Crittenden* for the appellant.

1. A deed which is in fact security for a loan is a mortgage, in contemplation of a court of equity, and whether a conveyance absolute on its face will take effect as a mortgage depends pri-

marily, if not exclusively, on the nature of the consideration. *Morris* v. *Nixon*, 1 How. 118; *Babcock* v. *Wyman*, 19 id. 289; *Price* v. *Robinson*, 13 Cal. 116; *Huntley* v. *Wheelwright*, 29 Md. 341.

2. A court of equity will not allow the right of redemption to be defeated by any agreement making that which is really a mortgage a conditional sale, but, where the transaction is doubtful, will incline to give effect to the instrument as a mortgage. *Russell* v. *Southard*, 12 How. 139; *Dougherty* v. *Colgan*, 6 Gill & J. (Md.) 275; *Artz* v. *Glover*, 21 Md. 456; *Baugh* v. *Merryman*, 32 id. 185.

3. The burden of proof is on the mortgagee, who claims a release of the equity of redemption, to show that it was made fairly, deliberately, and for an adequate consideration. Unless the transaction be fair and unmixed with any advantage taken by him of the use of his incumbrance, or of the necessitous circumstances of the mortgagor, equity will hold the parties to their original relation of debtor and creditor. *Dougherty* v. *Colgan*, 6 Gill & J. (Md.) 275; *Mills* v. *Mills*, 26 Conn. 213; *Hyndman* v. *Hyndman*, 19 Vt. 9; *Villa* v. *Rodriguez*, 12 Wall. 323; *Williams* v. *Owen*, 5 Myl. & Cr. 303; *Russell* v. *Southard*, *supra*; 2 White & Tudor, Lead. Cas. in Eq. (4th Am. ed.), pp. 1983, 1984, 1995.

*Mr. Walter D. Davidge* for the appellee.

The mortgagee was under no disability to purchase the equity of redemption; and the validity of the purchase does not, to use the language of this court, " depend upon his ability afterwards to show that he paid for the property all that any one would have been willing to give." *Russell* v. *Southard*, 12 How. 139. See also *Villa* v. *Rodriguez*, 12 Wall. 323; 3 Sugden, V. & P. (10th ed.) 227, 228; *Knight* v. *Majoribanks*, 2 Mac. & G. 10; *Webb* v. *York*, 2 Sch. & Lef. 661; *Conway's Ex.* v. *Alexander*, 7 Cranch, 218; *Hicks* v. *Hicks*, 5 Gill & J. (Md.) 85; *Trall* v. *Skinner*, 17 Pick. (Mass.) 213; *Wynkoop* v. *Cavring et al.*, 21 Ill 570. Such a transaction will not be set aside, except for manifest unfairness, or gross inadequacy of price; and neither of those grounds for relief is averred. The complainant testified in his own behalf, but was silent upon the subject of the value of the property.

More than eleven years elapsed between the date of the transaction now sought to be impeached and the filing of this bill, and no explanation of the delay is furnished. The laches of the complainant, and his long acquiescence in the assertion of adverse rights by the defendant, are a bar to this suit. *Badger* v. *Badger*, 2 Wall. 87 ; *Marsh* v. *Whitmore*, 21 id. 178.

MR. JUSTICE FIELD delivered the opinion of the court.

· This is a suit in equity to redeem certain property, consisting of two squares of land in the city of Washington, from an alleged mortgage of the complainant. The facts, out of which it arises, are briefly these : In March, 1857, the complainant, Samuel A. Peugh, borrowed from the defendant, Henry S. Davis, the sum of $2,000, payable in sixty days, with interest at the rate of three and three-fourths per cent a month, and executed as security for its payment a deed of the two squares. This deed was absolute in form, purporting to be made upon a sale of the property for the consideration of the $2,000, and contained a special covenant against the acts of the grantor and parties claiming under him. This loan was paid at its maturity, and the deed returned to the grantor.

In May following, the complainant borrowed another sum from the defendant, amounting to $1,500, payable in sixty days, with the same rate of interest, and as security for its payment redelivered to him the same deed. Upon this sum the interest was paid up to the 6th of September following. The principal not being paid, the defendant placed the deed on record on the 7th of that month. In January, 1858, a party claiming the squares under a tax title brought two suits in ejectment for their recovery. The defendant thereupon demanded payment of his loan, as he had previously done, but without success.

On the 9th of February following, the complainant obtained from the defendant the further sum of $500, and thereupon executed to him an instrument under seal, which recited that he had previously sold and conveyed to the defendant the squares in question ; that the sale and conveyance were made with the assurance and promise of a good and indefeasible title in fee-simple ; and that the title was now disputed. It contained a general covenant warranting the title against all par-

ties, and a special covenant to pay and refund to the defendant the costs and expenses, including the consideration of the deed, to which he might be subjected by reason of any claim or litigation on account of the premises. Accompanying this instrument, and bearing the same date, the complainant gave the defendant a receipt for $2,000, purporting to be in full for the purchase of the land.

The question presented for determination is whether these instruments, taken in connection with the testimony of the parties, had the effect of releasing the complainant's equity of redemption. It is insisted by him that the $500 advanced at the time was an additional loan, and that the redelivered deed was security for the $2,000, as it had previously been for the $1,500. It is claimed by the defendant that this money was paid for a release of the equity of redemption which the complainant offered to sell for that sum, and at the same time to warrant the title of the property and indemnify the defendant against loss from the then pending litigation.

It is an established doctrine that a court of equity will treat a deed, absolute in form, as a mortgage, when it is executed as security for a loan of money. That court looks beyond the terms of the instrument to the real transaction; and when that is shown to be one of security, and not of sale, it will give effect to the actual contract of the parties. As the equity, upon which the court acts in such cases, arises from the real character of the transaction, any evidence, written or oral, tending to show this is admissible. The rule which excludes parol testimony to contradict or vary a written instrument has reference to the language used by the parties. That cannot be qualified or varied from its natural import, but must speak for itself. The rule does not forbid an inquiry into the object of the parties in executing and receiving the instrument. Thus, it may be shown that a deed was made to defraud creditors, or to give a preference, or to secure a loan, or for any other object not apparent on its face. The object of parties in such cases will be considered by a court of equity: it constitutes a ground for the exercise of its jurisdiction, which will always be asserted to prevent fraud or oppression, and to promote justice. *Hughes* v. *Edwards*, 9 Wheat. 489; *Russell* v. *Southard*,

12 How. 139; *Taylor* v. *Luther*, 2 Sumn. 228; *Pierce* v. *Robinson*, 13 Cal. 116.

It is also an established doctrine that an equity of redemption is inseparably connected with a mortgage; that is to say, so long as the instrument is one of security, the borrower has in a court of equity a right to redeem the property upon payment of the loan. This right cannot be waived or abandoned by any stipulation of the parties made at the time, even if embodied in the mortgage. This is a doctrine from which a court of equity never deviates. Its maintenance is deemed essential to the protection of the debtor, who, under pressing necessities, will often submit to ruinous conditions, expecting or hoping to be able to repay the loan at its maturity, and thus prevent the conditions from being enforced and the property sacrificed.

A subsequent release of the equity of redemption may undoubtedly be made to the mortgagee. There is nothing in the policy of the law which forbids the transfer to him of the debtor's interest. The transaction will, however, be closely scrutinized, so as to prevent any oppression of the debtor. Especially is this necessary, as was said on one occasion by this court, when the creditor has shown himself ready and skilful to take advantage of the necessities of the borrower. *Russell* v. *Southard*, *supra*. Without citing the authorities, it may be stated as conclusions from them, that a release to the mortgagee will not be inferred from equivocal circumstances and loose expressions. It must appear by a writing importing in terms a transfer of the mortgagor's interest, or such facts must be shown as will operate to estop him from asserting any interest in the premises. The release must also be for an adequate consideration; that is to say, it must be for a consideration which would be deemed reasonable if the transaction were between other parties dealing in similar property in its vicinity. Any marked undervaluation of the property in the price paid will vitiate the proceeding.

If, now, we apply these views to the question before us, it will not be difficult of solution. It is admitted that the deed of the complainant was executed as security for the loan obtained by him from the defendant. It is, therefore, to be treated as a mortgage, as much so as if it contained a condition

that the estate should revert to the grantor upon payment of the loan. There is no satisfactory evidence that the equity of redemption was ever released. The testimony of the parties is directly in conflict, both being equally positive, — the one, that the advance of $500 in February, 1858, was an additional loan; and the other, that it was made in purchase of the mortgagor's interest in the property. The testimony of the defendant with reference to other matters connected with the loan is, in several essential particulars, successfully contradicted. His denial of having received the instalments of interest prior to September, 1857, and his hesitation when paid checks for the amounts with his indorsement were produced, show that his recollection cannot always be trusted.

Aside from the defective recollection of the creditor, there are several circumstances tending to support the statement of the mortgagor. One of them is that the value of the property at the time of the alleged release was greatly in excess of the amount previously secured with the additional $500. Several witnesses resident at the time in Washington, dealers in real property, and familiar with that in controversy and similar property in its vicinity, place its value at treble that amount. Some of them place a still higher estimate upon it. It is not in accordance with the usual course of parties, when no fraud is practised upon them, and they are free in their action, to surrender their interest in property at a price so manifestly inadequate. The tax title existed when the deed was executed, and it was not then considered of any validity. The experienced searcher who examined the records pronounced it worthless, and so it subsequently proved.

Another circumstance corroborative of the statement of the mortgagor is, that he retained possession of the property after the time of the alleged release, enclosed it, and either cultivated it or let it for cultivation, until the enclosure was destroyed by soldiers at the commencement of the war in 1861. Subsequently he leased one of the squares, and the tenant erected a building upon it. The defendant did not enter into possession until 1865. These acts of the mortgagor justify the conclusion that he never supposed that his interest in the property was gone, whatever the mortgagee may have thought.

Parties do not usually enclose and cultivate property in which they have no interest.

The instrument executed on the 9th of February, 1858, and the accompanying receipt, upon which the defendant chiefly relies, do not change the original character of the transaction. That instrument contains only a general warranty of the title conveyed by the original deed, with a special covenant to indemnify the grantee against loss from the then pending litigation. It recites that the deed was executed upon a contract of sale contrary to the admitted fact that it was given as security for a loan. The receipt of the $2,000, purporting to be the purchase-money for the premises, is to be construed with the instrument, and taken as having reference to the consideration upon which the deed had been executed. That being absolute in terms, purporting on its face to be made upon a sale of the property, the other papers referring to it were drawn so as to conform with those terms. They are no more conclusive of any actual sale of the mortgagor's interest than the original deed. The absence in the instrument of a formal transfer of that interest leads to the conclusion that no such transfer was intended.

We are of opinion that the complainant never conveyed his interest in the property in controversy except as security for the loan, and that his deed is a subsisting security. He has, therefore, a right to redeem the property from the mortgage. In estimating the amount due upon the loan, interest only at the rate of six per cent per annum will be allowed. The extortionate interest stipulated was forbidden by statute, and would, in a short period, have devoured the whole estate. The defendant should be charged with a reasonable sum for the use and occupation of the premises from the time he took possession in 1865, and allowed for the taxes paid and other necessary expenses incurred by him.

The decree of the Supreme Court of the District must be reversed, and the cause remanded for further proceedings, in accordance with this opinion; and it is

*So ordered.*