[L. A. No. 712. Department Two.—April 28, 1900.]

## ROSE CLARKE et al., Respondents, v. SALATHIAL FAST, Appellant.

MORTGAGE OF INSURANCE POLICY — TRANSFER TO MORTGAGEE — ADMISSION OF GENUINENESS—ACTION BY HEIRS—AVERMENTS OF ANSWER—BURDEN OF PROOF.—In an action by heirs of an insured person to recover from the mortgagee of the policy the surplus proceeds collected by him above the debt, the failure of the plaintiffs to deny by affidavit the genuineness of a second instrument of transfer made by the insured to the mortgagee after the date of the mortgage, purporting to sign and transfer the title, which was set forth in full in the answer, does not relieve the defendant from the burden of proving averments made by him, and deemed denied by the plaintiffs, that the policy was absolutely sold and transferred by the insured to the defendant for its actual value, that the transfer was free from mortgage or other trust, and that the defendant thereafter owned the policy.

ID.—AVERMENT OF MORTGAGE IN ANSWER—BURDEN OF PROOF AS TO FAIRNESS OF SUBSEQUENT TRANSFER.—The answer having averred that the original interest of the defendant in the policy was under a mortgage thereof to him by the insured, the burden of proof was upon him to show that the subsequent transaction, by which he claimed to have become the owner of it by transfer, was a fair transaction, that no advantage was taken of the necessities of the mortgagor, and that the consideration paid therefor was adequate, or what the policy was worth.

ID.—EVIDENCE—DESTROYED LETTER—DIFFERENCE OF COPY—HARMLESS RULING.—Where the defendant had testified that he had destroyed a letter received from the insured, and that what was handed to him as a purported copy was not a true copy of the letter he had received, the allowance of a question asked of him as to wherein it differed therefrom is not prejudicial error, where the copy was not received in evidence or shown to the jury.

ID. — ARGUMENT TO JURY — TRUTHFULNESS OF DEFENDANT — IMPROPER REFERENCE TO COPY OF LETTER—ABSENCE OF INSTRUCTIONS FROM RECORD—PRESUMPTION UPON APPEAL.—An improper reference by counsel in his argument to the jury upon the truthfulness of the testimony of the defendant to the copy of the letter which was not introduced in evidence, instead of referring, as counsel properly might, to the destroyed letter about which the defendant had testified, is not a sufficient fault to justify a reversal; and, in the absence of the instructions from the record, it will be presumed upon appeal that the improper reference was corrected by an instruction to the jury to disregard it.

ID.—SUPPORT OF VERDICT—FAILURE OF DEFENDANT'S PROOF—TRANSFER
NEEDED FOR COLLECTION OF POLICY BY ASSIGNEE.—A verdict for
the plaintiffs is supported by the failure of defendant to sus-
tain his burden of proof as to the consideration for the trans-
fer, or the extinction of the mortgage debt, and by the testi-
mony of the agent for the insurance company that no trans-
fer of a policy could be recognized by the company for any pur-
pose, unless it was absolute upon its face, and that it was
necessary that a new transfer should be made to make the
security effective, as the company would not recognize any
partial assignment, or deal with two persons.

ID.—PRESUMPTION AS TO INTENTION OF SECOND TRANSFER.—The presump-
tion arising from the second transfer, the first having been
given as security only, is that it was intended simply to per-
fect the transfer as security under the rules of the insurance
company.

APPEAL from an order of the Superior Court of Santa Bar-
bara County denying a new trial. W. B. Cope, Judge trying
cause. W. S. Day, Judge denying new trial.

The facts are stated in the opinion.

C. A. Storke, for Appellant.

John J. Boyce, for Respondents.

HAYNES, C.—This appeal is from an order denying de-
fendant's motion for a new trial, based upon alleged errors of
law occurring upon the trial, and upon the further ground that
the verdict of the jury was not justified by the evidence.

After the jury was sworn counsel for plaintiff read the plead-
ings and moved the court to direct the defendant to first intro-
duce evidence in support of his affirmative defense. The court
so directed, and the defendant excepted, and assigns this ruling
as one of the errors upon which he relies for a reversal of the
order.

The plaintiffs are the widow and minor son of C. W. Clarke,
deceased, and the complaint alleged that said C. W. Clarke, on
the twenty-first day of February, 1881, took out a certain pol-
icy of insurance, upon his own life, in the sum of five thousand
dollars, payable upon his death "to his heirs, executors, admin-
istrators, and assigns"; that on February 13, 1885, said policy
being in full force, said C. W. Clarke assigned it to the defend-

ant by way of mortgage to secure the repayment of the sum of two hundred dollars loaned by defendant to him on that day; that said C. W. Clarke died on August 6, 1895, intestate; that on October 23, 1895, the defendant received from the insurance company upon said policy the sum of five thousand three hundred and ninety-nine dollars and twenty-five cents, which sum plaintiffs allege the defendant holds in trust for them, less the amount of said debt and the premiums paid by the defendant upon said policy, and legal interest thereon, and alleged a demand upon the defendant for an accounting and payment.

The answer contained certain denials, two of which were of matters not alleged in the complaint, another was of an immaterial matter, and the only other denial was of a matter of law. But, "for a further affirmative defense," the defendant alleged that on February 13, 1885, said Clarke borrowed from him the sum of two hundred dollars, and promised to repay the same within three months from that date, "and, to secure the same, transferred and assigned" to defendant, "by way of mortgage, said policy of insurance." He then alleged: "That thereafter and on the twenty-eighth day of July, 1885, the said C. W. Clarke was unable to pay the sum so loaned and secured, and on said day, for its actual value, absolutely sold, transferred, and delivered said policy of insurance to said defendant free of all mortgage or other trust, by an instrument in writing," and proceeded to set out a full copy of the written transfer which purports, "for one dollar" in hand paid, "and for other valuable considerations," to assign and transfer all the right, title, and interest of Clarke in said policy to the defendant; and concluded by alleging that from said day he has been the owner of said policy, that he had paid all the premiums thereon, and was entitled to receive the moneys paid thereon after the death of said Clarke.

The plaintiffs did not file an affidavit denying "the genuineness and due execution" of the said written transfer so set out in the answer, and hence its genuineness and due execution is to be deemed admitted under the provisions of section 448 of the Code of Civil Procedure.

In *Moore v. Copp*, 119 Cal. 432, it was said that: "By genu-

ineness and due execution is meant nothing more than that it is not spurious, counterfeit, or of different import on its face from the one executed, but is the identical instrument executed by the party"; and, "that it° may be controverted upon any ground other than its genuineness and due execution." (See, also, *Myers v. Sierra Valley etc.*, 122 Cal. 675.) In *Brooks v. Johnson*, 122 Cal. 571, it was said: "It could never have been intended that the plaintiff is required to make an affidavit denying the instrument, or be precluded from making any defense whatever. There are many defenses which he is, and should be, entitled to make while possibly compelled to admit that he executed the instrument and that it is genuine, and which defenses it was intended by the code he might make under section 462." So in *Moore v. Copp, supra*, it was said: "But the plaintiff may controvert the instrument by evidence of fraud, mistake, undue influence, compromise, payment, statute of limitations, estoppel, and the like defenses, under section 462 of the Code of Civil Procedure." All other affirmative allegations in the answer are deemed denied under the provisions of section 462 of the Code of Civil Procedure, and hence it is denied that Clarke sold the said policy to the defendant, or that he sold it for its actual value, or that it was transferred or delivered to the defendant free of all mortgage or other trust, or that the defendant was the owner of it. Such denials, in view of the fact, conceded by the answer, that prior to and upon the date of this transfer the defendant held said policy as security only, are not inconsistent with the admission of the genuineness of the instrument set out in the complaint, since it may be absolute in form and yet held only as security, just as deeds of real estate, absolute in form, are often given as security simply, and are held, under such circumstances, to be a mortgage.

In the absence of such a provision as that contained in section 448 there could be no doubt that the burden of proof in this case would be upon the defendant; and while in many cases it is doubtless true that a failure to deny an instrument set out in the answer, and upon which an affirmative defense is based, would shift the burden of proof to the plaintiff, I do not think it would do so in this case, not only because the denial of the allegations of the answer, hereinbefore stated, go to the pur-

pose and true character of the transaction, but because the principles governing a subsequent release of the equity of redemption by a mortgagor of real estate to the mortgagee applies here, including the maxim "once a mortgage, always a mortgage," though that maxim has never been construed to prevent a mortgagee, by a subsequent contract, from purchasing the equity of redemption, or from obtaining a release of it for an adequate consideration. (1 Jones on Mortgages, sec. 340.) In *Peugh v. Davis*, 96 U. S. 332, 337, Mr. Justice Field, speaking for the court, said: "Without citing the authorities, it may be stated as conclusions from them that a release to the mortgagee will not be inferred from equivocal circumstances and loose expressions. It must appear by a writing importing in terms a transfer of the mortgagor's interest, or such facts must be shown as will operate to estop him from asserting any interest in the premises. The release must also be for an adequate consideration."

The allegation of the answer is that Clarke sold the policy "for its actual value"; but this allegation is deemed denied by the provisions of section 462 of the Code of Civil Procedure. The transfer states the consideration of "one dollar and other valuable considerations," but this does not show that the consideration was adequate. It is not even alleged that the debt secured by the first transfer was discharged.

In *Villa v. Rodriguez*, 12 Wall. 323, 339, it was said: "The law upon the subject of the right to redeem, where the mortgagor has conveyed to the mortgagee the equity of redemption, is well settled. It is characterized by a jealous and salutary policy. Principles almost as stern are applied as those which govern where a sale by a *cestui que trust* to his trustee is drawn in question. To give validity to such a sale by a mortgagor, it must be shown that the conduct of the mortgagee was, in all things, fair and frank, and that he paid for the property what it was worth. He must hold out no delusive hopes; he must exercise no undue influence; he must take no advantage of the fears or poverty of the other party. Any indirection or obliquity of conduct is fatal to his title. Every doubt will be resolved against him. . . . . The form of the instruments employed is immaterial. That the mortgagor knowingly surren-

dered and never intended to reclaim is of no consequence. If
there is vice in the transaction, the law, while it will secure to
the mortgagee his debt with interest, will compel him to give
back that which he has taken with unclean hands. Public pol-
icy, sound morals, and the protection due to those whose prop-
erty is thus involved, require that such should be the law."

It appearing from the answer that defendant's interest in
the policy was, in its inception, that of a mortgagee, the bur-
den rested upon him to show that the subsequent transaction,
by which he claims to have become the owner of it, was fair,
that no advantage was taken of Clarke's necessities, and that
the consideration paid was adequate. These facts do not ap-
pear upon the face of the transfer, a copy of which is set out
in the answer, while the fact of the sale, as well as the allega-
tion that it was absolute and for the actual value of the policy,
are alleged in the answer and are denied by force of the stat-
ute. Under these circumstances we think the court did not err
in holding that the burden of proof was upon the defendant.

2. Appellant contends that "the court erred in permitting the
plaintiff to examine the defendant on what was alleged to be
a copy of a letter sent to defendant by Carey W. Clarke, when
there was no evidence that it was a copy of any letter sent
to defendant."

Plaintiffs produced and read a letter written by the defend-
ant to Carey W. Clarke, bearing date February 9, 1891, ac-
knowledging the receipt of a letter from Clarke dated January
6, 1891, and which he testified had been destroyed. Plaintiff's
counsel handed the witness (the defendant) what purported to
be a copy of a letter written by Clarke to defendant, dated
January 6, 1891, and he testified that he never got a letter
like that, or of that wording. "There is some things in there
similar to his inquiry, but then I never got a letter of that
composition." The witness was then asked: "Now state what
there is in there that is different from the letter you got."
Counsel for defendant objected upon the ground that it was
incompetent, and the objection was overruled, and an excep-
tion taken. The witness answered, "I cannot do that; it is six
years ago."

The letter received by the witness had been destroyed by him.

Clarke, the alleged writer of the letter in question, was dead. The alleged copy was shown to be in his handwriting, but there was no evidence that it, or a letter of which it was a copy, had been mailed to the defendant. The contents of the alleged copy were not disclosed to the jury; and if it be conceded that the question should not have been allowed, we fail to see that defendant was prejudiced by the ruling.

3. During his argument to the jury counsel for plaintiff said: "I say to you, and ask you in all sincerity, whether or not Mr. Fast, when I tried to press him to acknowledge something about the letter we had a copy of which we sought to introduce, I will ask you, whether his testimony was truthful?" The defendant objected to this line of argument, and asked the court to confine counsel to the evidence in the case; to which the court replied, "Of course, if counsel goes outside the record, they will have to take their chances in the matter." Of course, counsel should not have assumed that the paper about which the defendant was examined "was a copy" of anything, since it was not admitted in evidence; but he had a right to comment upon the testimony of the defendant relating to a letter which he admitted he had received and answered and destroyed, and submit to the jury the question whether it was truthful. The fault of counsel was not sufficient to justify a reversal of the order denying a new trial, especially as the instructions of the court to the jury are not in the transcript, and it does not appear that the court did not, in its final instructions, instruct the jury to disregard said reference to said alleged copy.

4. It is also contended that the evidence was not sufficient to justify the verdict.

It is true the transfer of the policy was, upon its face, absolute. But it does not follow from this admission that the transfer was not intended as a security simply.

The policy in question was issued by the Equitable Life Assurance Society. Mr. Shields, the manager of that society for southern California, whose deposition was taken by the defendant, testified that he had in his possession the assignments of February 13 and July 28, 1885; that the second assignment appeared to have been the company's printed form filled out; that he had nothing to do with the original assignments and

had no personal knowledge in regard to them. He was then asked: "Does the Equitable Life Assurance Company use any other or different form of assignment in the case of an assignment for collateral security than where there is an absolute sale of the property? A. No, sir. They decline to, because it would involve them in endless trouble and annoyance. They must have an absolute assignment, so as to deal with one party. They will not deal with two or three parties. No partial assignments are recognized."

The first assignment contained the following: "Upon the following condition, however, that a certain promissory note for the sum of two hundred dollars, bearing date thirteenth day of February, 1885, given by said Carey William Clarke to the said Salathial Fast, is well and truly paid according to the terms thereof, then this assignment is to be void."

The defendant testified that no note was given; that Judge Dillard advised him he did not need a note; that the note was to bear one and one-half per cent per month interest, but Dillard would not make any note. If no note was given, it is clear that no note was canceled and returned to Clarke, nor is there any pretense that any written acknowledgment was given that the two hundred dollars loaned to Clarke was paid, satisfied, or canceled, either by a sale of the policy, or otherwise. The defendant testified, however, that at the time the absolute assignment was made Clarke agreed to pay him seventy-five dollars for him, the defendant, to keep the policy; and two or three weeks afterward gave him a note for seventy-six dollars and seventy cents, being said seventy-five dollars and one dollar and seventy cents that he owed for cooking utensils that he had sold. This note defendant testified was lost, and had never been paid.

Defendant's answer concedes that the transaction was originally a mortgage, and the testimony of the agent of the insurance company is that no transfer of a policy is recognized by the company for any purpose, unless it is absolute on its face, and therefore it was essential that a new transfer, absolute in its terms, should be made, in order to make the security effective. The presumption arising from the second transfer, the first having been given as security only, is that it was intended simply to perfect the transfer as security, the first being inef-

fectual for any purpose. Clarke and the notary who took his acknowledgment of each of said transfers are both dead. The defendant testified that the second transfer was an absolute sale. He alleged in his answer that Clarke was unable to pay the money loaned at the time the second transfer was executed, and for the "actual value" of the policy sold it to him. What that actual value was is not alleged, but he testified that Clarke gave him his note for seventy-five dollars to get him to keep the policy; that "the policy was not worth what he (Clarke) said it was worth, and he agreed to make his word as good as he could in that way.". This note, he said, was dated the 13th or 15th of August, 1885. But before this testimony was given the defendant was asked: "Did Clarke ever pay you or deliver you any papers besides the policy of insurance? A. He gave me a note for seventy-five dollars and seventy cents, a sum due since in a transaction two or three weeks after the last absolute assignment of the policy, for an indebtedness that he owed me."

Here is a clear inconsistency. After having testified that the seventy-five dollar note was for a sum due in a transaction two or three weeks after the absolute assignment of the policy, he testified that Clarke agreed to give him seventy-five dollars to keep the policy, and the money not having been paid, the note was given, and this, he testified, had been lost. If the seventy-five dollars was money due in a subsequent and different transaction, it was not a consideration for the sale of the policy; and if that note was given by Clarke to induce the defendant to buy the policy, the transaction was, to say the least, peculiar. The defendant held the policy as security for two hundred dollars. Inasmuch as Clarke could get rid of the policy at any time by ceasing to pay the premiums, it is not likely that he would offer a bonus of seventy-five dollars to induce the defendant to buy it, whilst he might be willing to pay a bonus of seventy-five dollars to have the defendant continue to hold it as security. But in either case there was no consideration given by the defendant to obtain the actual ownership of the policy.

The testimony further shows that on at least two occasions Clarke wrote the defendant in regard to this policy, but these

letters were not produced by the defendant, he having destroyed them. Defendant's answer to one of these letters, dated February 9, 1891, was put in evidence, which, while not admitting that he held the policy as security, was not in any respect inconsistent with that hypothesis, since Clarke was not entitled to the benefit of the policy without payment of the money secured and interest, and also the premiums paid and interest thereon, and which were lumped by the defendant at a sum considerably in excess of the actual amount due.

It is not contended that defendant has not been fully paid for the money loaned and all that he has expended in paying premiums, together with interest on each, and we think the conclusion reached by the jury that the defendant held said policy as security simply is justified by the law and the evidence, and that the order denying defendant's motion for a new trial should be affirmed.

Gray, C., and Cooper, C., concurred.

For the reasons given in the foregoing opinion the order appealed from is affirmed.

McFarland, J., Temple, J., Henshaw, J.