# TOBRINER *v.* WHITE.

EVIDENCE; INJUNCTIONS; PROMISSORY NOTES.

Parol evidence is admissible to show that the maker of promissory notes secured by deed of trust took title to the land and executed the notes for the accommodation and at the request of the payee and as part of a transaction involving the sale and transfer of the land by the payee to other parties, and was not to be held personally liable on the notes by the payee; and a court of equity, at the suit of the maker, will enjoin the executors of the payee from suing out execution on a judgment at law obtained by them against the maker of the notes.

No. 1126.   Submitted November 15, 1901.   Decided December 4, 1902.

HEARING on an appeal by the defendants from a decree of the Supreme Court of the District of Columbia, in a suit for an injunction to restrain the defendants from further proceeding in an action at law on certain promissory notes.

*Affirmed.*

The COURT in its opinion stated the case as follows:

This is a suit in equity to restrain proceedings at common law.

The case was heard in the court below on demurrer to the bill of complaint, and consequently the statements of the bill are accepted as true. The facts, as they appear from these statements, are the following:

John H. Glick, now deceased, was the owner of a tract of land on Brightwood avenue, in this District. On November 4, 1892, he entered into a contract with Robert E. L. White and Philip M. Snowden to sell it to them for $34,000, of which the sum of $9,000 was to be in cash, and the sum of $25,000 in deferred payments to be secured by deed of trust on the property. Subsequently, on November 23, 1892, the arrangement was so far modified as that White and Snowden were authorized to form an association, or syndicate, as they called it, to take the property in their place. Accordingly the Harewood Park Land Syndicate, an incorporated association, was formed for the purpose, and the cash payment of $9,000 required was paid from the contributions of its members. When the necessary deeds and other papers came to be executed, it was first proposed that Glick should convey the property to two persons named as trustees, who should hold for the syndicate, and who, as such trustees, should execute their promissory notes for the deferred payments; and the deeds and notes were so prepared. To this, however, Glick objected, as he had also previously objected to dealing directly with the syndicate, inasmuch as there were women among the members. In order, as he said, to avoid possible future complications, he suggested that the conveyance from himself should be to some one unmarried person, who would thereupon execute the promissory notes for the deferred payments and the deed of trust to secure them, and immediately thereafter convey the property, subject to the deed of trust, to two trustees for the benefit of the syndicate. The suggestion was adopted, and the transaction was completed in accordance therewith.

The appellee, George W. White, without any consideration whatever moving to him from any of the parties, and acting merely as a conduit for the title, thereupon consented to act as the intermediary to take and convey the title and to execute the notes, it being done, as stated in the bill of complaint, " at the request of the said John H. Glick, P. M. Snowden and R. .E. L. White, in the presence of all of them, with the understanding, agreement and assurance from the said Glick at the time the same were signed, 'that the notes were not to take effect as promissory notes of the plaintiff, but were given and accepted as a mere convenience to the said Glick and said syndicate." And the statement further is that Glick then and there agreed with the appellee that he, Glick, would look to the land, and not to the appellee, for the payment of the money. Upon this assurance the papers were executed, and the promissory notes, five in number for $5,000 each, payable in one, two, three, and four years respectively after date, which was January 4, 1893, to the order of John H. Glick, were delivered to the latter by the appellee, George W. White.

John H. Glick died on October 11, 1896; and the promissory notes in question, all of which yet remained unpaid, although there would seem to have been some payments on account of interest, came into the hands of the executors of his will, who are the appellants in this case, Leon Tobriner and John H. F. Glick, and they are now held by them. In the mean time John H. Glick before his death had dealt exclusively with the members of the syndicate, and not at all with the appellee, in regard to the notes and the interest thereon, and had extended one or more of the notes at their request. In fact, it is conceded by every one that the appellee never had any interest in the subject-matter, further than to act as intermediary, as has been stated.

On April 21, 1897, the trustees under the deed of trust to secure the notes, of whom Mr. Tobriner was one, after previous advertisement, sold the property under the provisions of the deed, apparently to one Sugenheimer, but in reality to themselves, as representing the estate of John

H. Glick, Sugenheimer being interposed, it is alleged, as a fictitious bidder, who, although he paid no money whatever, received the title to the property, but not long afterwards reconveyed it to the trustees, who reported the amount of the proceeds of the alleged sale to Sugenheimer to be $21,000, and the net proceeds after the payment of expenses to be $19,640.19, which they proceeded to credit upon the notes. By this process, three of the notes, with their accrued interest, were reported as paid; and the other two had a balance of the proceeds credited upon them, which, according to the statement of the appellants, furnished to the appellee, left due upon the fourth and fifth notes a sum of $9,191.56, as of the date of the day of sale, April 21, 1897.

The deeds from the trustees to Sugenheimer and from Sugenheimer back to the trustees were recorded on the same day, February 25, 1898; and on the same day the appellants, in answer to a rule which had been served upon them in the Orphans' Court at the instance of some person, stated that they had been " unable to realize upon the said promissory notes, having been unable to sell the real estate conveyed as security for the payment thereof, and the balance of said notes not secured, as aforesaid, are now in litigation."

On May 19, 1898, demand was made by the appellants, as executors of the estate of John H. Glick, upon the appellee for a settlement of the balance claimed by them to be due upon the notes; and such settlement not being forthcoming, they entered suit at common law in the Supreme Court of the District against him for such balance. The appellee appeared and defended the suit, and at the trial sought to show the circumstances of the execution and delivery of the notes and the entire transaction between himself and John H. Glick, as here stated. But this testimony was excluded as inadmissible on the ground that it tended to vary the terms of a written instrument, and the jury were directed to render a verdict for the plaintiffs, which was accordingly done.

The appellee forthwith instituted the present suit in equity by filing his bill for an injunction against the appel-

lants to restrain them from further proceedings at law. There was subsequently an amendment to the bill, wherein the circumstances of the alleged sale under the deed of trust and the subsequent proceedings, which were unknown to the appellee at the time of the filing of the original bill, were detailed, as hereinbefore stated. Upon the bill and the amendment thereto there was a restraining order issued, which was subsequently modified so far as to permit the appellants to have judgment entered on the verdict which they had obtained.

The appellants interposed a demurrer to the bill and the amendment thereto; and when the cause came on for hearing, the demurrer was overruled, and the appellants had leave to answer. Of this leave they failed to avail themselves; and ultimately final decree was rendered against them, whereby they were perpetually enjoined from further prosecuting the proceedings at law.

From this decree they have appealed.

*Mr. Leon Tobriner* for the appellants:

1. The appellee was guilty of laches. The notes in suit were executed January 4, 1893. Sale was made under the trust securing them April 21, 1897. He was notified that the estate claimed a balance against him on account thereof May 19, 1898. Suit was instituted against him December 6, 1898. He filed his pleas thereto on or about December 30, 1898. The bill in this cause was filed December 29, 1899;— Not until after the case at law had been tried and *the jury had returned their verdict,* and but a day or two before judgment would have been entered thereon under the rules. Appellee makes no attempt to explain this delay. See 2 Daniells Ch. Pr. (4th ed.), 1624; Adams' Equity, 197.

2. The appellee admits the execution of the notes in suit; he admits that they were executed to secure the deferred payments of the purchase money of the real estate which was conveyed to him by the appellant's testator. His defense is that he was not expected to pay these notes nor to be held

liable for them in any way; that although the notes were promissory notes executed upon valuable consideration, nevertheless they were not to be treated as his notes.

Evidence to this effect was held inadmissible in the trial of the cause at law as coming within the rule that parol evidence is inadmissible to alter, vary or contradict the legal import of a written instrument.

The purpose of the bill is to circumvent this rule, and to introduce parol testimony which will entirely negative the legal import of the written contract. This cannot be done. *Hendrickson* v. *Hinckley,* 17 How. 443; *Sprigg* v. *The Bank of Mt. Pleasant,* 14 Pet. 201.

3. How the facts set forth in the amended bill can constitute a defense to the notes, so that the relief predicated thereon, to wit, the delivery of the notes and cancellation thereof, can be granted, we are at a loss to understand. The only theory upon which we imagine these facts could be alleged is the second ground upon which courts of equity interfere with proceedings at law, to wit, that the appellee was prevented by mistake, surprise or fraud from presenting the facts which he claims to have discovered, in his amended bill. But as we have already said, they certainly constitute no defense, and the bill does not bring them within the general rule, already quoted, as announced by the Supreme Court of the United States and by the decisions in Maryland, which are terse expressions of the general rule. *Hill* v. *Reifsnider,* 46 Md. 556–563; *Kirby* v. *Pascault,* 53 Md. 532, 535; *Gorsuch* v. *Thomas,* 57 Md. 334, 339.

*Mr. Robert E. L. White* for the appellee:

1. The judgment should be set aside as having been obtained by fraud. Encyc. of Pl. & Pr., pp. 1180, 1182; Freeman on Judgments, Vol. 2, Sec. 492; *Scott* v. *Shreve,* 12 Wheat. 605; *Hartshorn* v. *Day,* 19 How. 211; *U. S.* v. *Throckmorton,* 98 U. S. 68.

2. The bill in this case shows reasonable diligence on its face; the defendant at law did all that could be reasonably expected of him; he exercised the " diligence requisite in

the ordinary business of life " in presenting his defense at law and invoking the aid of this court. He attempted the law in good faith. Am. & Eng. Encyc. of Law, Vol. XII, p. 145, and cases cited; *Earl of Oxford's Case,* 2 White & Tudor, 1293–1294; *Bohrer* v. *Fay,* 3 MacA. 145 (D. C.); *Sauer* v. *City of Kansas,* 69 Mo. 47. The bill states a case where, through their testator, " defendants have improperly possessed themselves of something by means of which they have an unconscientious advantage at law." *Little* v. *Price,* 1 Md. Ch. 182. The complainant shows that he was disabled by a positive rule of law, without fault or negligence on his part, from bringing the merits of his case fairly and fully before the court of law, and that is a reason for maintaining a new suit to set aside and annul the verdict, the complainant having had no day in court and no opportunity to defend. This is a disability which a court of law cannot remove, but yet which renders the defendant's demands unconscientious and manifestly wrong. *Hibbard* v. *Eastman,* 47 N. H. 507; *Marine Ins. Co.* v. *Hodgson,* 7 Cranch (U. S.), 332.

3. Complainant is remediless and, therefore, invokes the aid of this court. Encyc. Pl. & Pr., Vol. XI, p. 1193 (d). The bill shows a real necessity for coming to this court for injunction. *Worthington* v. *Lee,* 61 Md. 530; *Boyce's Ex'ors* v. *Grundy,* 3 Pet. 210, L. Ed. VII, 655; *Sullivan* v. *Railroad Co.,* 94 U. S. 806; Book XXIV, 324; Encyc. Pl. & Pr., Vol. II, p. 1190 (b) and note 1. There is no attempt here to vary the written agreements (notes); the relief is sought upon the ground that by false suggestion, deceit, broken promises, misplaced confidence tantamount to fraud, the party seeking relief was entrapped into signing the notes in which he wo* not otherwise have involved himself, thus impeaching the justice of the verdict at law by facts and on grounds on which he could not avail himself at law. *Duncan* v. *Lyon,* 3 Johns. Ch. 356; *Boyce* v. *Grundy, supra.*

4. The defendants stand precisely in the situation of their testator, who suffered no loss whatever and " were he living and undertook to enforce payment of these notes thus procured against the complainant it would be a gross fraud."

*Boyce* v. *Grundy, supra;* High on Inj., Vol. II, Sec. 66; Wait's Actions and Defenses, Vol. III, p. 729, citing: *Marine Ins. Co.* v. *Hodgson, supra; Truly* v. *Wanzer,* 5 How. 141; *Ross* v. *Harper,* 99 Mass. 175; *Young* v. *Reynolds,* 4 Md. 375; *Crim* v. *Handley,* 94 U. S. 642; *Embry* v. *Palmer,* 107 U. S. 3; *Knox Co.* v. *Harshman,* 133 U. S. 154; *Marshall* v. *Holmes,* 141 U. S. 589; *Hendrickson* v. *Hinckley,* 17 How. 443 (1855); *N. Chicago Roll. Mill Co.* v. *St. Louis,* 152 U. S. 596; *Bateman* v. *Willoe,* 1 Schoales & Lefroy's Report, 201; *Marine Ins. Co.* v. *Hodgson,* 7 Cranch, 332; *Webster* v. *Skipwith,* 4 Cush. (Mass.) 341; *Fisher* v. *Greene,* 5 Colo. 541; *Dilly* v. *Barnard,* 8 G. & J. 185; *Barnes* v. *Dodge,* 7 Gill, 109; *Bresch* v. *McCauley,* 7 Gill, 197; *Gowler* v. *Lee,* G. & J. 358; *Lyday* v. *Double,* 17 Md. 195; *O'Neale* v. *Bridge Co.,* 18 Md. 24; *Webster* v. *Hardesty,* 28 Md. 599; *Jameson* v. *Hall,* 37 Md. 220; *Ewing* v. *Nickle,* 45 Md. 413; *Hill* v. *Reifsneider,* 46 Md. 563; *Darling* v. *Balto.,* 51 Md. 10; *Kirby* v. *Pascault,* 53 Md. 536; *Railroad Co.* v. *Railroad Co.,* 57 Md. 273; *Wagner* v. *Shank,* 59 Md. 318.

5. The law case is not *res judicata. Parker* v. *The Judges, etc.,* 12 Wheat. 561; *Ableman* v. *Roth,* 12 Wis. 81. See also Story, Sec. 385, and Freeman on Judgments, Vol. II, Secs. 486 and 487; Mitf. & Tyler's Pl. & Pr., pp. 221–2, and cases there cited; *Marshall* v. *Holmes,* 141 U. S. 589.

6. The subject of injunction in restraint of proceedings at law before and after verdict and judgment is ably and exhaustively discussed and the rules of equity applicable thereto stated affirmatively and negatively, with citations of cases and examination thereof in the American notes to the Earl of Oxford's case in White & Tudor's Leading Cases in Equity, Vol. II, part 2, p. 1291. See also *Merriman* v. *Walton,* 105 Cal. 403, 30 L. R. A. 786.

Mr. Justice MORRIS delivered the opinion of the Court:

There is no difficulty in regard to the facts in this case. By the demurrer and the election of the appellants to stand

by that demurrer they are conceded to be as they are stated to be by the appellee in his bill of complaint and the amendment thereto; and from those facts there is but one inference to be drawn for our present purpose, namely, that a clear case is presented for the intervention of a court of equity by the process of injunction. If John H. Glick were living, and he sought to enforce the payment of these promissory notes from the appellee notwithstanding the circumstances under which they were executed and delivered to him, such action would be a gross fraud upon the appellee. No such fraud or fraudulent purpose, of course, is to be imputed to the appellants. We have no doubt that they are honestly seeking to perform what they deem to be their duty. Even if they have personal knowledge of the facts and circumstances as stated, it may be that, for their own protection in their accounting in the Orphans' Court, it was a prudent precaution for them to have the judgment of a court of competent jurisdiction in respect of the enforcement of these notes. But their right to such enforcement is no greater than would have been the right of their testator; and the equity which would have precluded him from holding the appellee liable is equally binding upon the appellants as his personal representatives. This proposition, apart from the rigid rule of law which they seek to invoke, we do not understand to be controverted by the appellants.

The question made by the appellants, is, that, notwithstanding the facts and circumstances which have been stated, there is a rigid rule of law applicable to the case, and applicable alike in a court of equity as in a court of common law — the rule that " parol evidence is inadmissible to contradict or substantially vary the legal import of a written agreement " — which is the rule of all the text-books, and which has been repeatedly indorsed and applied by the Supreme Court of the United States. See *Sprigg* v. *Bank of Mt. Pleasant,* 14 Pet. 201; *Hendrickson* v. *Hinckley,* 17 How. 443; *Richardson* v. *Hardwick,* 106 U. S. 252; *Baltzer* v. *Raleigh, etc., RR. Co.,* 115 U. S. 634. But this contention is

based upon a total misapprehension of the nature and extent of the rule. Precisely the same argument has been made unsuccessfully in many similar cases, as in the matter of deeds delivered in escrow and not to take effect except upon the happening of some contingency (*Pawling* v. *United States*, 4 Cranch, 219), and in the matter of deeds absolute on their face but intended to operate as mortgages (*Peugh* v. *Davis*, 96 U. S. 332), and in numerous other similar cases, where the purpose is not to attack the written instrument or to question its validity according to its true legal import, but to set up some collateral agreement to explain the object of the parties in executing and receiving the instrument. The Supreme Court of the United States, speaking by Mr. Justice Field, in the case of *Peugh* v. *Davis*, 96 U. S. 332, has clearly stated the distinction. The controversy in that case was whether a deed absolute on its face was not a mortgage; but in disposing of the case the Supreme Court laid down the law generally in regard to the rule cited concerning the inadmissibility of parol testimony, and said:

" It is an established doctrine that a court of equity will treat a deed absolute in form as a mortgage, when it is executed as security for a loan of money. That court looks beyond the terms of the instrument to the real transaction; and when that is shown to be one of security, and not of sale, it will give effect to the actual contract of the parties. As the equity, upon which the court acts in such cases, arises from the real character of the transaction, any evidence, written or oral, tending to show this is admissible. The rule which excludes parol testimony to contradict or vary a written instrument has reference to the language used by the parties. That can not be qualified or varied from its natural import, but must speak for itself. The rule does not forbid an inquiry into the object of the parties in executing and receiving the instrument. Thus, it may be shown that a deed was made to defraud creditors, or to give a preference, or to secure a loan, or for any other object not apparent on its face. The object of parties in

such cases will be considered by a court of equity; it constitutes a ground for the exercise of its jurisdiction, which will always be asserted to prevent fraud or oppression, and to promote justice. *Hughes* v. *Edwards,* 9 Wheat. 489; *Russell* v. *Southard,* 12 How. 139; *Taylor* v. *Luther,* 2 Sumn. 228; *Pierce* v. *Robinson,* 13 Cal. 116."

The object of the parties to the transaction in the present case was not to perpetuate any personal liability on the part of the appellee, but to avoid possible entanglements that might result if Glick had dealt directly with the syndicate or its members. The course pursued was not unusual or extraordinary, although somewhat hazardous to the person put forward as an intermediary. It is not unusual, in order to effect some such purpose as that entertained by John H. Glick in this instance, to put forward a man of straw, as the expression is, who is financially irresponsible, or whose financial responsibility is distinctly eliminated from the transaction, to take title and execute notes and deeds for the payment of purchase money, when the purpose is for the vendor of property to look to the property itself, and not to the purchaser, for the payment of the deferred purchase money. The promissory notes issued in such a case are intended chiefly as a measure of value, and for the convenience of a transfer of interest, if such transfer be desired, and not to secure the personal liability of the maker of the notes. And if such be the fact, as in the present case it is fully conceded to be, it would be strange if the parties should be precluded from putting their contract in that shape by a rule of law intended merely to secure certainty in the construction of written instruments. The written instrument in such cases is not the whole contract between the parties. The arrangement comprises not only the instrument of writing, but also collateral matters, more or less independent of the writing, which determine the object for which the writing is to be used. Equity intervenes, not to overthrow the writing, but to enforce the whole contract, when the enforcement of the writing alone

without the remainder of the contract would be a fraud upon the person bound by the writing.

The jurisdiction of equity in such cases is so well established and so universally recognized that citation of authority in support of the proposition would be useless and unnecessary. It is sufficient for us that the Supreme Court of the United States has laid down the law on the subject as distinctly and positively as it has done in the case of *Peugh* v. *Davis*, before cited. It only remains to be determined in the particular instance under consideration whether a case has been made out for the application of the principle. That such a case has been made out in the proceeding now before us seems to us to be too clear to need elaboration. A case is admitted where it would be a gross fraud upon the appellee to enforce the written instrument in disregard of the collateral agreement between the parties to the transaction; and it is plainly a case that calls for the intervention of a court of equity.

We are of opinion that there was no error in the decree appealed from, and that such decree should be *affirmed, with costs. And it is so ordered.*