### HOPPING v. BALDRIDGE et al.

No. 17941.   Opinion Filed Feb. 7, 1928.

Rehearing Denied April 24, 1928.

(Syllabus.)

Mortgages—Option Contract Executed to Mortgagee Without Additional Consideration—Upon Foreclosure and Payment of Mortgage the Mortgagor Entitled to Release of Option Contract.

Where a real estate mortgage is executed, and the mortgagor, at the same time and place, executes an option to the mortgagee on the real estate described in the mortgage, and said mortgage and option are based upon the same consideration, to wit, the loan of money, and thereafter the mortgagee brings an action in foreclosure on said mortgage and the mortgagor thereafter, in said action, tenders into court the amount of the loan, with all interest thereon, together with other legal charges attendant thereto, such mortgagor is thereupon entitled to a judgment of release from the option so executed, as well as all other instruments made to secure the payment of said loan.

Error from District Court, Creek County; Fred A. Speakman, Judge.

Action by J. S. Hopping against Dessie Lee Baldridge and others for foreclosure of mortgage. Judgment foreclosing mortgage,

but also canceling option contract therein incorporated, and plaintiff brings error. Affirmed.

T. D. Evans and Hughes, Foster & Ellinghausen, for plaintiff in error.

Wallace & Wallace, W. R. Wallace, and Blakeney & Ambrister, for defendants in error.

LESTER, J. J. S. Hopping, the plaintiff, brought an action in the district court of Creek county against the defendants Dessie Lee Baldridge and Swimmer Baldridge to foreclose a mortgage on certain real estate.

The plaintiff in his petition stated and alleged that certain other persons claimed an interest in said property, and therefore joined them as parties defendants.

In due course of pleading in said cause, the defendants Baldridge filed an amended answer therein, in which they admitted the execution of the mortgage and note set forth in plaintiff's petition and offered to pay into court the sum due thereon, and that thereupon the plaintiff then be required to execute a release upon said mortgage and also surrender and convey to the defendants all pretended rights held by the plaintiff under a certain option executed by the defendants to the plaintiff, said option covering the real estate described in plaintiff's mortgage.

Upon trial of said cause the court rendered judgment in favor of the plaintiff for the mortgage indebtedness, interest, cost, etc, and decreed that upon the payment into court of the said amount by the defendants Baldridge, the option held by plaintiff be canceled and held for naught, and this appeal is taken from that part of the judgment decreeing the cancellation of the option executed by defendants Baldridge and in the possession and ownership of the plaintiff.

The plaintiff in his brief sets forth four assignments of error, but each of them involves the same proposition as contained in plaintiff's assignment No. 2, which is as follows:

"The court erred in finding, holding, and deciding that the said option contract given by the said defendants in error to one Lucyl Wilson and assigned to the said J. S. Hopping was void and unenforceable."

It appears from the evidence that the defendants Baldridge, being hard pressed for money, sought to secure a loan on certain real estate, and that they entered into a contract with Lucyl Wilson, who in fact was the agent and representative of the

plaintiff, whereby the defendants Baldridge executed a mortgage on certain real estate, and at the same time, and as a part of the same transaction, executed to the mortgagee an option for the purchase of an undivided one-half interest in and to the oil and mining rights of the lands described in the real estate mortgage.

The option executed by the defendants Baldridge to the mortgagee provided, in part:

"Witnesseth, that in consideration of the sum of $1 and in consideration of the party of the second part making and executing to parties of the first part a loan in the sum of $665, payable to first parties as follows: Part in cash and part by way of taking up certain real estate mortgage in favor of J. S. Hopping and the American Investment Company, respectively, which said loan was made and executed on this date, and for other good and valuable considerations, the receipt of all of which are hereby acknowledged, the said first parties hereby bargain, sell and grant unto the second party, the option and right, for the term of ten years from the date hereof, to purchase from first parties, an undivided one-half interest in and to the oil and gas mining rights in and to the following described property, situated in the county of Creek, and state of Oklahoma, to wit: * * *

"It is understood and agreed by and between the parties hereto that in the event the second party elects to exercise said rights in and to said real estate, on or before ten years from the date hereof. and within the time above specified, that the said second party may pay the said $2.500 to the said Dessie Lee Baldridge, nee Dawson. above named, or to the Farmers Bank & Trust Company of Claremore, Okla., to her credit and for her benefit."

In the trial of said cause Swimmer Baldridge testified, in part:

"A. We talked matters over awhile and he told me that he would loan me the money, but he would not loan it to me unless I would give him an option, he would loan me the money."

The defendants contend that the option executed in favor of the mortgagee clogged the title to the defendants' property. and that its procurement by the mortgagee was unconscionable and oppressive, and that the consideration for the said option was based upon the money loaned by the plaintiff, Hopping, to said Baldridges.

It is admitted by counsel representing the opposing parties to this action that they have been unable to find any American cases involving the identical proposition here presented for review.

It is well settled that a mortgagee, in order to better protect himself against loss from the loan of money, may require any reasonable condition or stipulation intended to better secure the payment of the mortgage debt, but when such debt is fully discharged, together with all the legal charges or claims attached thereto, the property so mortgaged should then become fully released from all agreements and conditions theretofore made and entered into between the mortgagor and mortgagee.

Section 260, page 412, Corpus Juris, vol. 41, states:

"It is competent for the parties to insert in a mortgage any conditions or stipulations intended for the better securing of the mortgage debt, or to make the security more effective, provided they are not so oppressive as to be unconscionable; and such agreements are not invalid, as fettering the equity of redemption, although they may hinder the mortgagor in the free use or disposition of the premises. But it is a general rule in regard to all such conditions that they cannot extend beyond the life of the mortgage, that is to say, when the mortgage debt is fully paid and discharged, the land, and its owner in the use of it, must be as free as if no mortgage had been made, and any provision in the mortgage, or collateral thereto, inconsistent with this right, cannot be enforced."

The mortgage and the option were executed by the mortgagors on the same date. Under the terms of the mortgage the indebtedness became due and payable within ten years from the date of said mortgage. The option executed by the mortgagors was to be exercised by the mortgagee within ten years from the date thereof.

The consideration as shown by each instrument was for the loan of the sum of $665 from Lucyl Wilson to the Baldridges, and it thus appears that the two instruments constituted one transaction and were based upon the same consideration.

In the case of In re Edwards' Estate, 11 Ir. Ch. 367, the court said:

"The rule of equity is that no onerous engagement of any description can be entered into by a mortgagor with his mortgagee on the occasion of the mortgage. I do not doubt that if this contract had been entered into by Mr. Edwards with Mr. Jackson, after the completion of the mortgage transaction, and when Mr. Edwards had got the money in his pocket, it would be perfectly valid; but then the mortgagor would be under no kind of pressure. and he would be able to exercise his unbiased judgment. as to whether it was a fair contract. But when the contract is

part of the arrangement for the loan, and is actually inserted in the mortgage deed, it is presumed to be made under pressure, and is not capable of being enforced.

"If the land had fallen in value below L4000, Mr. Jackson would have insisted on being treated as a mortgagee; but, as it has risen, he says he is a purchaser; that is, he gets a collateral benefit over and above his principal and interest, which a court of equity never permits."

In the case of Browne v. Ryan, 2 Irish Reports (1901) 653, which was tried in the Queens Bench Division, the defendant appealed to the Court of Appeals, and the facts in the case as recited in said opinion, in part, are as follows:

"In this case Patrick Ryan, a farmer, had an intention of selling the lands of Curragh Feakle, which he owned. The plaintiff John Browne is an auctioneer. Ryan wanted a sum of L200 which Browne agreed to give, or procure for him on the security of a mortgage of the farm. Accordingly by a deed dated the 16th June, 1898, between Patrick Ryan of the one part and John Browne of the other—a mortgage in the statutory form—Ryan (in consideration of L200 expressed to be paid by Browne to Ryan) conveyed the lands to Browne for securing payment, on the 16th December, 1898, of the principal sum of L200, with interest at L7 per cent., and also an obligation if the principal was not paid, to pay interest at same rate on every 16th June and 16th December, reducible to L6 per cent. if punctually paid.

"An agreement under seal was also made which was admitted to form part of the mortgage transaction. It bears date the 21st June, 1898. It is in the following terms:—Whereas the said Patrick Ryan is about selling the lands of Curragh Feakle, in the county of Clare, and where as the said John Browne has advanced the sum of L200 on the security of the said lands to the said Patrick Ryan, he the said Patrick Ryan agrees to give the sale of the said lands to the said John Browne, said lands to be put up for sale by public auction within twelve months from the date hereof, and to pay to the said John Browne the usual commission of L5 per cent. on the amount of the purchase-money, and in the event of the said lands being sold otherwise than through the agency of the said John Browne, to pay unto the said John Browne L5 per cent. on the amount of such purchase-money.

"In point of fact the money was procured from the Bank of Ireland on the security of the lodgment of the mortgage. It is admitted that the parties must be treated as occupying the relation towards each other of mortgagor and mortgagee, and that the agreement must be read as if contained in the mortgage-deed. Patrick Ryan paid off the L200 before the day of redemption arrived, and obtained a reconveyance, dated the 19th November, 1898, by which Browne reconveyed the lands 'discharged from all principal money and interest secured by and from all claims and demands under the said indenture of mortgage.'"

Walker, L. J., speaking for the court, said:

"It is not material to consider what our decision would be if there were not in existence long established rules of courts of equity governing the relations between mortgagor and mortgagee, and putting limitations on the stipulations which may be contained in a contract of mortgage. Nor is it material to consider whether such rules had their origin in the laws against usury, because in substantial matters they have survived the abolition of the usury laws. The question is, 1, what the rules of courts of equity were in relation to contracts between mortgagor and mortgagee made in connection with the mortgage transaction; 2, how far those rules have been invaded by decisions in recent times not easy to reconcile with each other; and 3, whether the present case falls within a principle lying at the foundation of the rules, and which, when rightly understood, is unaffected by any decision. As I understand the principle, it is that when a transaction appears, or has been declared to be a mortgage, courts of equity regard the instrument only as a security for the repayment of the principal, interest, and costs named and secured, and the mortgagor is entitled to get back his property as free as he gave it, on payment of principal, interest, and costs, and provisions inconsistent with that right cannot be enforced. The equitable rules, 'once a mortgage always a mortgage,' and that the mortgagee cannot impose any 'clog or fetter on the equity of redemption,' are merely concise statements of the same rule."

In Deugh v. Davis, 96 U. S. 332, 24 L. Ed. 775, the court said:

"It is an established doctrine that a court of equity will treat a deed, absolute in form, as a mortgage, when it is executed as security for a loan of money. That court looks beyond the terms of the instrument to the real transaction; and when it is shown to be one of security and not of sale, it will give effect to the actual contract of the parties. * * * It is also an established doctrine that an equity of redemption is inseparably connected with a mortgage; that is to say, so long as the instrument is one of security the borrower has in a court of equity a right to redeem the property upon payment of the loan. This right cannot be waived or abandoned by any stipulation of the parties made at the time, even if embodied in the mortgage.

This is a doctrine from which a court of equity never deviates. "

In the case of Plato v. Roe, 14 Wis. 490, the court said:

"But here the defendant's own evidence shows that he was applied to for a loan, and that the plaintiff desired to mortgage the property, and that the transaction assumed the present form at his dictation. And it cannot be necessary to refer to authorities to show that where the conveyance is in reality a mortgage, the lender cannot, by any ingenious devices, or provisions inserted in the agreement, cut off the equity of redemption."

It appears that in this case the consideration for the execution of the mortgage and option was the loan of money in the sum of $665 to the defendants Baldridge.

It further appears that the execution of the two instruments constituted one transaction and that the mortgagee required the execution of the option before he would assent to the loan of money.

The interest of the mortgagee in and to said lands extended no farther than the loan extent of his loan, interest, etc., and when the mortgagors made a legal discharge of all the indebtedness arising under said loan. the mortgagee had no further interest in said lands, and the mortgagors were then entitled to a full release of said property from the instruments which they had executed to secure the payment of said loan.

Judgment is affirmed.

MASON, V. C. J.. and PHELPS, HUNT, RILEY, and HEFNER, JJ., concur.

Note.—See 41 C. J. p. 412, §260.