ANNIS. BERNER and HELEN ZURAWSKI, Appellants, v. GERMAN STATE BANK OF LEMARS and J. U. SAMMIS.

**Trusts:** CONVEYANCE BY TRUSTEE. Where the owner of an interest in
1  land, holding the balance in trust, conveyed the same with knowledge of the trust to a bank to which all parties were indebted, the grantee acquired no title to the interest of the *cestui qui trust.*

**Accounting:** EVIDENCE. In an action for an accounting for the pro-
2  ceeds of land conveyed to a bank as security, the evidence is considered and held to show that defendant agreed to pay plaintiffs the amount for which the land was sold in excess of the debt and expenses, without regard to when the sale was effected.

**Same.** A cashier indebted to a bank made a settlement thereof at
3  which time the bank held title to land owned by him and others, as security under an agreement that the same should be sold and the proceeds in excess of the debt paid over to them. Held, that the settlement did not include his profits arising from a sale of the land in question.

**Application of funds.** Where land was conveyed as security, to be sold
4  and the proceeds in excess of the debt paid to the grantor, the

proceeds should be applied on the indebtedness existing at the time of the sale.

*Appeal from Plymouth District Court.*— HON. WM. HUTCH-INSON, Judge.

THURSDAY, OCTOBER 27, 1904.

SUIT for an accounting of the proceeds of a sale of land in Texas. The hearing was had on depositions, save the testimony of two or three witnesses. The petition was dismissed, and plaintiffs appeal.

*Struble & Struble,* for appellants.

*P. A. Boland, Milchrist & Scott,* and *Zink & Roseberry,* for appellees.

LADD, J.— In March, 1893, O. G. Berner, John Zurawski, and J. U. Sammis purchased two tracts of land in Texas, consisting of 5,804 acres, at $2 per acre. Berner took one-half interest therein, and the other two one-fourth each. To make the first payment, Berner borrowed of the defendant bank $1,654, Sammis $827.16, and Zurawski $1,000. The title was taken in the name of Sammis in trust for the three, and it remained in him until September 26, 1896, when he conveyed it to the bank. This deed does not appear to have been recorded until July 7th the next year. No obligations were assumed by the trustee save to hold the title for the benefit of the *cestuis que trust,* and, as the bank was fully advised that Sammis was merely trustee of the undivided three-fourths of the land, it acquired no other title than he had. As to such three-fourths, title did not pass to the bank as security; and, as no relief is sought by Sammis, the argument of the question as to whether a deed executed to secure a debt may by agreement become an absolute conveyance is not germane to the case. But see *Haggerty v.*

1. TRUSTS: conveyance by trustee.

*Brower,* 105 Iowa, 395; *Peugh v. Davis,* 96 U. S. Rep.
332 (24 L. Ed. 775).

For several months prior to December 14, 1897, the
officers of the bank had been pressing these parties for more
security, and an arrangement was entered into at about that
time whereby the bank was to have the land at
the agreed price of $2.25 per acre. This
would leave a balance to be applied on the indebtedness of
the three purchasers of $4,638.40. Notes of Berner and
Zurawski were surrendered, and others executed for the
difference, after allowing their portions of the above amount.
All agree that as a part of this arrangement the bank was
to account to them for the proceeds of the sale of the land,
after reimbursing itself for interest, taxes, and expenses
paid out, and the amount allowed for the land, with interest,
and to apply the same on any indebtedness owing the bank.
The bank, however, insists that this was only on condition
that sale should be made within thirteen months. The land
was sold May 8, 1901, at $4 per acre, the bank receiving
$3,724.95 above all disbursements.

2. ACCOUNTING:
evidence.

There can be no doubt of the right of Zurawski and
Berner to yield to the bank their beneficial interest in the
land, and that this was done is established by the evidence
introduced by the plaintiffs, even though that offered by
the defendant is of so doubtful a character, as appellant
contends. The right to these profits, as already indicated,
depends on whether the arrangement was that the bank
should account therefor generally, or should do so only in
event of a sale within 13 months. A separate examination
of the record has convinced us that there was no such limi-
tation. These parties were largely indebted to the bank,
and the fact that the State Bank Examiner was insisting
that their obligations be cut down accounts for the cancella-
tion of a part of their indebtedness instead of holding the
deed as security only. The object of the bank was not to
speculate in real estate, but to collect debts due it, and it

may well have assured the parties of its purpose to account for the profits whenever a sale might be effected. This was the course naturally to have been pursued. This was what the president, in charge of the bank, notwithstanding his testimony concerning the limitation to thirteen months, is clearly proven to have understood. Zurawski ceased to be its cashier in 1899, and moved to Burlington, Iowa, and yet when the sale was made the president notified him thereof by telegraph. Why do this if he was not interested in the land? Later, Zurawski wrote the bank for a statement, and thereafter one was prepared by the president, specifying disbursements and receipts, and showing the net profit mentioned above, and this he showed to Berner, and, to the inquiry as to whether there would be anything left for him, answered, " No, it will hardly reach to pay us what you owe us yet." He handed Sammis a similar paper, showing what his interest in the profits were, and said he would credit him with some $940 for his share. This conduct not only refutes his claim with respect to the alleged limitation, but tends strongly to confirm the plaintiffs' theory of the case. Of the other directors, Kluckhorn was of the impression that the bank was to account, and held, while testifying that a time within which a sale should be made was fixed, could not recall what it was. C. H. Becker admitted that he was unable to remember the conversation or the substance of it, but stated as a conclusion that there was a time limit of thirteen months. The deposition of Knorr does not indicate any time limit, but he was called during the trial, and testified specifically that it was part of the arrangement. On the other hand, Sammis, Zurawski, and Berner each testify positively and consistently that the profits were to be accounted for, and this without regard to the time within which the lands should be sold. True, Berner presented a letter to the bank in which he proposed to sell the Texas land on the conditions the bank now insists upon, but this was coupled with the condition that it

should convey back his homestead, which the bank held as security, and some other conditions.  The evidence that the propositions of this letter were not accepted is undisputed, and the arrangement was oral and independent of its contents.  We are inclined to think that because of it, however, the discussion of the directors was turned to the proposed reconveyance of Berner's homestead, and under what conditions this should be done, and that the discrepancies in the testimony, wholly unintentional, have resulted from confusing the two transactions.  When viewed in the light of what the president of the bank did and the purpose of the transaction, appellant's theory is much the more reasonable, and, as we think, is sustained by the preponderance of the evidence.

II.  Zurawski assigned his claim against the bank to the plaintiff Helen Zurawski, his daughter, and against it the defendant interposes the defense that there had been a settlement in full in February, 1899.  At that time he was owing the bank nearly $9,000, and was its cashier.  The directors were not satisfied with his manner of discharging his duties, and insisted upon a settlement and his retirement from the position of cashier. It was arranged that in satisfaction of his indebtedness he should assign to the bank stock therein of the face value of $5,000 at par, and convey his house and lot, which was incumbered for $1,200, at $1,800 above the mortgage, and that he should execute his note for the balance.  This was done, and the note subsequently paid.  While a loan of doubtful character made by him was mentioned, there is no ground for saying it entered into the negotiations, farther than to add to the reasons for wishing the termination of his connection with the bank.  The Texas land deal was not referred to, and by " complete settlement," as spoken of by the directors, was evidently intended the satisfaction of his indebtedness as appeared on the books of the bank.  That was all it claimed of him, and the property he transferred

3. SAME.

to it was computed at a value agreed upon. There is no ground for thinking other items entered into the settlement, and especially none which were purely contingent, and which did not constitute claims that could then have been asserted against the bank. We are satisfied that the settlement talked of was that which Zurawski owed the bank according to its books. In this sense it was complete, but did not include nor purport to include anything else.

III. The assignment by Berner to Durst, and from the latter to the plaintiff Annie Berner, requires no attention, for the reason that the bank was never charged with notice thereof. She acquired merely Berner's right to one-half the profits derived from the sale of the land over and above what was necessary to satisfy his indebtedness to the bank.

That he owed the bank notes amounting to $60 and $592 is conceded. It also held a note of $1,000, purchased to protect the bank's interest in the homestead, on which 4. APPLICATION there was a mortgage to secure it, and the OF FUNDS. amount owing on these more than equaled his share in the profits the bank ought to account for out of the proceeds of the sale of the land. The indebtedness on which the profits were to be applied was that existing at the time these were realized, and the bank should have so applied them. To the end that this may be done, and that judgment may be entered in favor of Helen Zurawski for the sum of $931.24, with interest from July 1, 1901, at the rate of 6 per cent. per annum, the cause is reversed, and remanded to the district court.— *Reversed.*