# SIS v. BOARMAN.

EQUITY; MORTGAGES AND DEEDS OF TRUST, ENFORCEMENT OF;
    LIMITATIONS; LACHES; MERGER; NOTICE, RECORD OF DEED
    AS; INCHOATE RIGHT OF DOWER; PARTITION.

1. The enforcement in equity of mortgages and deeds of trust of real
   estate, is governed by the statute of limitations applicable to
   possessory actions at common law for the recovery of real
   estate, which statute in this District is that of 21 James I, Ch.
   16, prescribing twenty years within which such actions must
   be instituted.
2. Because a deed of trust creditor has permitted nineteen years and
   five months of such term of twenty years to elapse without
   attempting to enforce his deed of trust, he will not for that
   reason alone be held guilty of laches, and to be barred from
   the prosecution of his suit to enforce. Some special ground
   must be shown to justify the application of the doctrine if
   laches in cases to which the statute of limitations is directly
   applicable.
3. The fact that an indebtedness is contracted for the purchase and
   consumption of intoxicating liquors, does not, in this District,
   constitute ground for a court of equity to refuse its aid in en-
   forcing it.
4. Where a debtor gives a deed of trust to secure the payment of a
   bond executed to his creditor, and the bond is subsequently
   reduced to judgment, the bond is not so merged in the judg-
   ment as to preclude the creditor from enforcing the deed of
   trust in equity.
5. The omission of the words "before me" by the recorder of deeds
   in his transcription of a certificate of acknowledgment attached
   to a deed, reading that the grantor "personally appeared be-
   fore me on the day and date hereof," does not make the record
   of the deed ineffectual to give constructive notice to third per-
   sons of the transfer; and if the transcript be subsequently
   corrected by the recorder, the record is admissible in evidence.
6. An inchoate right of dower in a wife can not be broader than the
   estate of her husband upon which it depends.
7. Neither the beneficiary nor the trustee under a deed of trust can
   maintain a bill for partition of the property covered by the
   deed of trust; but the purchaser at a sale thereunder may do so.

    No. 670.  Submitted April 26, 1897.  Decided May 25, 1897.

HEARING on an appeal by the complainant from a decree

dismissing a bill of complaint in a suit for the foreclosure of a deed of trust and for partition. *Reversed.*

The COURT in its opinion stated the case as follows:

On December 29, 1875, John H. Boarman, one of the appellees, being indebted to the appellant, John H. Sis, in the sum of $158.88, executed and delivered to him his bond, or instrument of writing under seal, whereby he acknowledged the said indebtedness and obligated himself, his executors, administrators and assigns, to pay the same, with interest, in one year thereafter. At the same time, to secure the payment of said bond, the said appellee, John H. Boarman, executed and delivered to the appellant a deed of trust by way of mortgage, whereby he conveyed to one Richard R. Crawford, now deceased, as trustee, the undivided share of him, the said grantor, in the estate, both real and personal, of his deceased father, Charles L. Boarman, after the decease of the grantor's mother, Mary Boarman, the widow of said Charles L. Boarman, to whom by the last will and testament of the latter a life estate had been given in all his property, with remainder over to the children of the testator in fee simple. The interest of John H. Boarman conveyed by this deed of trust seems to have been one-fifth undivided part of his father's estate, subject to the life estate of the testator's widow, which did not end until her death in February, 1896, after the institution of the present proceedings. It seems that whatever personal estate had been left by Charles L. Boarman was in some way consumed,—at all events, that none of it had come in any way to the satisfaction of the appellant's claim ; and that the only real estate of which Charles L. Boarman died seized and possessed was a piece of land on Fifth street in the former town of Georgetown, twenty feet front by one hundred and fifty feet in depth, with a building on it, which was and continued to be the family residence. It was upon his undivided interest in the property that John H. Boarman's deed of trust to

Richard R. Crawford, as trustee, took effect; and the present proceedings have been instituted in order to enforce the deed of trust against the undivided interest.

Under date of May 10, 1883, or afterwards, all the heirs and devisees of Charles L. Boarman, other than Richard T. Boarman, one of his sons, and including, it seems the widow and life tenant, Mary Boarman, conveyed to said Richard T. Boarman all their right, title and interest in the real estate mentioned. The conveyance of his interest by John H. Boarman to Richard T. Boarman seems to have been without any reference to the deed of trust thereon previously given to secure the appellant; and Richart T. Boarman has testified in the present cause that, at the time of the conveyance of said interest to him, he had no knowledge of said deed of trust, and had caused no examination to be made of the land records of the District of Columbia, where the deed had been recorded immediately after its execution, and where upon such examination it would necessarily have been found.

On December 28, 1888, which was one day before the statute of limitations would have apparently barred a suit at common law upon the bond given to the appellant by John H. Boarman, the appellant instituted proceedings at common law in the Supreme Court of the District of Columbia, upon the bond; and although the suit seems to have been permitted to slumber for some years, the appellant procured to have judgment rendered therein in his favor on June 6, 1895, for the amount of the indebtedness mentioned in the bond, the sum of $158.88, with interest from December 29, 1875, and the costs of the suit. John H. Boarman permitted the judgment to go against him by default. A writ of *fieri facias* was issued upon it, and was returned unsatisfied.

Thereupon on August 27, 1895, the present suit in equity was instituted for the purpose of the enforcement of the deed of trust, recourse to equity having been necessitated by the

death of the trustee, Richard R. Crawford, and the absence from the District of Columbia of one of his heirs, with his place of residence unknown, if the heirs could have executed the trust.

The original bill, which was filed against John H. Boarman, Richard T. Boarman, Laura J. Crawford, and William L. Crawford, was found to be defective; and upon the interposition and allowance of a demurrer to it, an amended bill was filed on March 16, 1896, wherein the original bill was recited and incorporated, and its prayers reiterated, and an additional prayer was inserted to the effect that, as the whole property in the hands of Richard T. Boarman was incapable of subdivision, the whole should be sold, and not merely the undivided interest that had been conveyed by John H. Boarman. In this amended bill the death of the life tenant, which had occurred a short time before, was set up.

Answers were filed to this amended bill by Richard T. Boarman and John H. Boarman. The record before us does not show what proceedings were had against the Crawfords; but presumably the proper steps were taken to divest them of the legal title that had been vested in them by the deed of trust.

In the answer of Richard T. Boarman it was suggested that his wife, Lizzie Boarman, had and claimed to have a dower interest in the land in question, and that she had not consented to any sale of it, and had not been made a party to the suit. Thereupon the complainant filed on May 23, 1896, a second amended bill, making Lizzie Boarman a party to the suit; and she answered in due time, alleging that she had a dower interest in the property and that she declined to consent to any sale.

The answers called for proof of the complainant's claim, which was abundantly furnished in the testimony, the defendant, John H. Boarman, himself fully admitting it. The burden of the defense set up was mainly the technical one

of the statute of limitations and laches in the prosecution of the claim.

Upon this last mentioned ground, it is understood, the court below dismissed all the bills of complaint. From the decree of dismissal the complainant has appealed to this court.

*Mr. Wm. J. Miller* for the appellant:

1. Chancery follows the law in obedience to the statute of limitations in relation to the same subject matter. *Watkins* v. *Harwood*, 2 G. & J. 307. A deed of trust of real estate to secure the payment of money is in effect a mortgage, and the period of limitations applicable to it is twenty years. *Shellabar* v. *Robinson*, 97 U. S. 68. The remedy thereon will not be barred by any lapse of time short of the period sufficient to raise the presumption of payment. *Smith* v. *Railroad Co.*, 33 Gratt. 620; *Grant* v. *Burr*, 54 Cal. 298; *Lockwood* v. *White*, 26 Atl. Rep. 639; *Cranford* v. *Severson*, 5 Gill, 448; *Railroad Co.* v. *Trimble*, 51 Md. 101; *Hughes* v. *Edwards*, 9 Wheat. 497; *Elmendorf* v. *Taylor*, 10 Wheat. 152.

2. When a mortgage and a bond are given to secure the payment of the same debt the creditor may sue on all his remedies at the same time. He may file a bill in equity, bring ejectment, and also an auction upon the bond or note. *Lingan* v. *Hardeston*, 1 Bland's Ch. 281; *Moreton* v. *Harrison*, 1 Bland, 499; *Ober* v. *Gallagher*, 93 U. S. 199. The judgment on the note or bond does not extinguish the right to have execution of the deed of trust. *Bank* v. *Guttschlick*, 14 Pet. 19.

3. The statute of limitations, as to the deed of trust, did not begin to run in this case until the death of the life tenant on February 13, 1896. *Doe de Curzon* v. *Edwards*, 6 M. & W. 301.

4. The omission of the words "before me" in the record of the certificate of acknowledgment did not invalidate the deed or the record thereof. *Black* v. *Aman*, 6 Mack. 156;

*Van Ness* v. *Bank,* 13 Pet. 21; *Deery* v. *Cray,* 5 Wall. 797; *Kelly* v. *Calhoun,* 95 U. S. 710; *Carpenter* v. *Dexter,* 8 Wall. 519. The record thereof is notice to all the world. R. S. D. C., Sec. 447; *Hughes* v. *Edwards,* 9 Wheat. 499.

*Mr. J. J. Waters* for the appellees:

1. The statute of limitations runs from the date of the mortgage, and not from the maturity of the bond alleged to be secured by it. The trust could have been enforced in one year, and hence not only the presumption of payment from the lapse of time, but gross laches bar the relief sought by the appellant. *Kirk* v. *Parkhill,* 1 MacA. 28; *Rider* v. *White,* 3 Mack. 305; *Abraham* v. *Ordway,* 158 U. S. 416; *Cropley* v. *Eyster,* 9 App. D. C. 373; *Townsend* v. *Vanderwerker,* 160 U. S. 171; *Willard* v. *Wood,* 164 U. S. 502.

2. The amended bill was for a new cause of action, and the same considerations apply. *Railroad Co.* v. *Weyler,* 158 U. S. 285.

3. The appellant, being only a lien holder has no right to partition. 17 Am. & Eng. Encyc. Law, 694 *et seq.*

4. The defective record of the deed did not operate as notice. *Lynch* v. *Murphy,* 161 U. S. 247; *Elliott* v. *Piersall,* 1 Pet. 328; *Lyon* v. *Alley,* 130 U. S. 177; 19 Am. & Eng. Encyc. Law, 458, 459.

Mr. Justice Morris delivered the opinion of the Court:

1. It is well settled law that, wherever they are applicable, statutes of limitations are of equal binding force in equity as at common law. *Elmendorf* v. *Taylor,* 10 Wheat. 152; *Lewis* v. *Marshall,* 5 Pet. 470; *Bank of United States* v. *Daniel,* 12 Pet. 32; *Miller* v. *McIntyre,* 6 Pet. 61; *Moore* v. *Greene,* 19 How. 69; *Godden* v. *Kimmell,* 99 U. S. 201; *Ware* v. *Galveston Co.,* 111 U. S. 170; *Meath* v. *Phillips Co.,* 108 U. S. 553; *Norris* v. *Haggin,* 136 U. S. 386; *Willard* v. *Wood,* 1 App. D. C. 44. It is equally well settled that the enforcement in equity of mortgages of real estate, and of deeds of trust of

real estate given by way of mortgage, is governed by the statute of limitations applicable to possessory actions at common law for the recovery of real estate, which statute in this jurisdiction is that of 21 James I, Ch. 16, prescribing a period of twenty years within which such action must be instituted. Story's Equity Jurisprudence, Secs. 529, 1028*a*, 1520, and cases cited. It is likewise well settled, and so far settled as that it must be regarded as elementary law, that in all cases the period of limitations begins to run only from the time when a cause of action accrues, and not from the time when a liability is incurred or an obligation is executed. Wood on Limitations of Actions, Sec. 117.

From these elementary propositions of law it is entirely plain that the enforcement of the deed of trust in the present case was not barred by the statute of limitations, either at the time of the institution of the suit, or at the time of the filing of the amended bills, or either of them, or for several months after the filing of the last amended bill. The bond secured by the deed of trust did not mature until December 29, 1876; and the complainant had not until then a cause of action; and only from that date did the period of limitations of twenty years begin to run.

2. But it is argued that, although the statute of limitations may not have barred the suit, there was laches on the part of the complainant such as to preclude him in equity from maintaining the suit.

There is no room here for the application of the doctrine of laches. It would be absurd to hold that, if a person has a term of twenty years under the statute within which to bring his action, he is to be regarded as guilty of laches unless he brings it within some shorter period. Nineteen years and five months are not the equivalent of twenty years either at common law or in equity.

While the doctrine of laches and the principle on which statutes of limitations are based are grounded upon the same requirement of public policy, that stale demands

should not be advanced, when possibly the evidence of the original transaction has by the lapse of time been lost, or the memory of witnesses has for the same reason become impaired, or the conditions of the parties have been so materially changed that the same exact justice can not now be done to them, yet in their application the two things are quite different. As was said by the Supreme Court of the United States in the case of *Galliher* v. *Cadwell*, 145 U. S. 368, "laches is not, like limitation, a mere matter of time, but principally a question of the inequity of permitting the claim to be enforced, an inequity founded upon some change in the condition or relation of the property of the parties." Again, in the case of *Metropolitan Bank* v. *St. Louis Dispatch Co.*, 149 U. S. 436, the same court said: "Courts of equity in cases of concurrent jurisdiction consider themselves bound by the statutes of limitations which govern actions at law. In many other cases they act upon the analogy of cases at law. But even when there is no such statute governing a case, a defence founded upon the lapse of time and the staleness of the claim is available in equity."

In the case of *Willard* v. *Wood*, 1 App. D. C. 44, 58, it was said by this court: "The principle is too well established to admit of controversy, that the statute of limitations is no less a bar to relief in equity than it is to a recovery at common law. It is true, in matters of mere equitable rights or titles, courts of equity apply the statute simply by way of analogy to its application at law to legal titles of the same nature."

In the case of *Cholmondeley* v. *Clinton*, 2 Jac. & Walk. 141, it was said by Sir Thomas Plumer, Vice Chancellor: "Whenever a bar has been fixed by statutes to the legal remedy in a court of law, the remedy in a court of equity in the analogous cases has been confined to the same period."

From these and numerous other cases that might be cited, it is quite plain that it is only in the matter of the enforcement of purely equitable rights that the doctrine of laches

applies, and that it has no place in the matter of the enforce-
ment of those rights for which the statute law expressly
provides a limitation.   We do not desire to be understood
as holding or intimating that in no case whatever in which
the statute of limitations is directly applicable there may
not be superadded reasons for the application of the doctrine
of laches so as practically to reduce the period of limitations
in the particular case.   What we do hold is, that upon the
ground of lapse of time alone, there is no room for the joint
application of the statute of limitations and the doctrine of
laches where they would conflict with each other, and the
equitable doctrine would have the effect of reducing the
statutory period of limitations.   If there are exceptional
cases where it would be proper to apply the doctrine, no such
case is here presented.   No exceptional circumstance of any
kind is adduced as a basis for such application.   The con-
tention is simply that because the complainant has permitted
nineteen years and five months to elapse of the term of twenty
years, to which by the statute and by the invariable current
of decision in all such cases in equity he is entitled, he is
for that reason alone to be held guilty of laches, and to be
barred from the prosecution of his suit.   We find no warrant
for that contention; nor do we find any different doctrine
stated in the case of *Abraham* v. *Ordway,* 158 U. S. 416, or
in the case of *McKnight* v. *Taylor,* 1 How. 161, or in any of
the other cases cited on behalf of the appellees.

The case of *McKnight* v. *Taylor,* upon which, it seems,
principal reliance is placed, was determined by its own
peculiar facts.   There a deed of trust had been made to
secure a number of creditors.   It provided that, if the grantor
in the deed should not by a day therein named, a little up-
wards of four years thereafter, pay the several creditors
thereby secured their several claims, then the trustee, on the
demand of any of the said creditors, should proceed to sell
the property and discharge the debts.   Nearly twenty-four
years after the date of the execution of the deed, and about

nineteen years and eleven months after the day specified in the deed at which the creditors might call upon the trustee to sell, the latter (the trustee) filed a bill in equity, alleging as his reason for recourse to a court of equity that there was a previous outstanding mortgage or deed of trust upon the premises, unreleased upon the record, but actually satisfied, and alleging also that the maker of the deed claimed that the debts had all been paid, and threatened to withhold possession of the property in the event of sale, thereby obstructing the execution of the deed. It was further alleged in the bill that the sale had been demanded by an alleged creditor, who was the assignee of an assignee of one of the original creditors, and by certain other creditors not named in the bill. But it appeared in the sequel that no other creditor than this assignee who was named had requested the enforcement of the trust, and that this creditor had not proved his claim, and took his assignment at a time when he knew that the claim was in litigation, and thereafter slept upon his rights, if any he had, until the circumstances had been entirely changed. And various circumstances showing the change of conditions and the inequitable character of the proceeding are recited in the report of the case.

In this case, it will be noticed, the embarrassed debtor, who had executed the deed of trust, had reserved the right to himself to settle with the creditors; and yet for nearly twenty-four years thereafter the alleged creditor in the case, so far as the record shows, had done absolutely nothing to effect a settlement, and gave no reason whatever for his delay in seeking a settlement, and so far as we know, his claim may have been barred long before the time when the deed of trust became operative. The deed of trust, under the circumstances, could not have had the effect of keeping it alive for an indefinite period.

Clearly this case is no authority for the position assumed by the appellees in the case now before us, which simply is that mere lapse of time, even within the period of limita-

tions, is to be regarded in equity as laches. And this is made even more clear by the case of *Bowman* v. *Wathen*, 1 How. 189, decided by the Supreme Court of the United States at the same term at which the case of *McKnight* v. *Taylor* was decided, and very soon after that case. In the case of *Bowman* v. *Wathen*, the court, discussing the rule laid down by Lord Camden in the case of *Smith* v. *Clay*, 3 Brown's Ch. Rep., and by Lord Redesdale in the case of *Hovenden* v. *Lord Annesley*, 2 Scholes & Lefray, 636, distinctly recognized the statute of limitations as applicable in such cases, and applied the doctrine of laches only when it was sought, upon the theory that the statute of limitations does not run against a trust, to enforce such a trust long after the lapse of the period of limitations.

The doctrine of laches, as we have intimated, may be applied in exceptional cases even within the period of limitations; but there must be some special ground shown for its application, and mere lapse of time alone, in cases to which the statute is directly applicable, is not such ground. There is here no conflict of evidence, no claim of loss of evidence from the lapse of time or the failure of the memory of witnesses, no change of condition or of circumstances, that would render inequitable the enforcement of the contract between the original parties. The bond, the deed of trust, and the indebtedness which both were intended to secure, have been amply proved, and have in fact been admitted by the obligor, John H. Boarman. Moreover, the bond itself has been reduced to judgment, it being thus shown conclusively that it has never been paid or satisfied. No circumstances whatever are shown to warrant the application here of the doctrine of laches, so as to shorten the period of limitations prescribed by law for the enforcement of mortgages and deeds of trust of real estate.

In this connection, and with reference also to other questions in the case, reference is made to the alleged character of the purpose for which the indebtedness of the appellee,

John H. Boarman, was originally contracted—the purchase and consumption, as it is claimed, of intoxicating liquors. But there is no sufficient proof that this was the foundation of the indebtedness; and even if there were such proof, it is not apparent how, under the laws of the District of Columbia, this should constitute a ground for a court of equity to refuse its aid to enforce a valid contract.

3. The objection of the appellees, that the bond given by John H. Boarman became merged in the judgment obtained upon it by the appellant, and that the appellant was thereafter precluded from proceeding to enforce the deed of trust in a court of equity, requires no consideration from us. The rule that a person, having a security for a legal claim, may proceed concurrently at common law and in equity, at common law to enforce the claim directly and in equity to render the security available towards its satisfaction, is too well settled as an elementary principle in equity to require the citation of authorities upon the subject.

4. It is claimed, in the next place, that the appellee, Richard T. Boarman, is an innocent purchaser for value of the interest of his brother, John H. Boarman, in their father's property; that it appears from the evidence that he had no actual knowledge at the time of his purchase that his brother John had given the deed of trust, here in controversy, and that the record of this deed was not constructive notice to him, in consequence of the omission of certain words from the transcript upon the land records of the District of Columbia, of the certificate of acknowledgment affixed to the deed.

Assuming it to be true, although it would seem to be contrary to the inherent probabilities of the case, that Richard T. Boarman had no actual knowledge of the fact that his brother had given this deed of trust, yet undoubtedly he is to be charged with constructive notice of the deed from the records, if the transcript upon the records was in due form. The contention is that it was not in due form.

The original deed was produced in evidence in the case. It showed no defect whatever, either in the deed itself or in the notary's certificate of acknowledgment attached thereto. That certificate purported to read as follows: " John H. Boarman . . . personally appeared before me on the day of the date hereof. . . ." In the transcript of this certificate in the land records, which was also offered in evidence, the two words, " *before me* " were omitted, plainly as the result of a clerical error, so that the record read thus: "John H. Boarman . . . personally appeared on the day of the date hereof . . ." During the course of the evidence, the attention of the Recorder of Deeds was called to the matter, and that officer upon the exhibition of the original document to him, voluntarily interlined upon the record the omitted words; and the record thus corrected was then also offered in evidence. It is now argued that in consequence of the omission of these two words from the record as it stood at the time of the purchase by Richard T. Boarman from his brother, John H. Boarman, that record was ineffectual to give constructive notice.

We find no merit in the argument. The defect in the record is plainly not a substantial defect in any reasonable view that can be taken of it. It was not the omission of any substantial statement of fact. It left no doubt as to the meaning of the transaction, and it could not by any possibility have misled anyone.

The provisions of the statute law for the record of deeds and conveyances of land must be taken in a liberal and reasonable sense to effectuate the beneficial purposes which they are intended to subserve. This record system, so universal with us, although practically unknown to the common law, is not in derogation of the common law or of common right, but a most valuable adjunct to it; and there is no reason why its great utility, which is now universally recognized and acted upon in every part of our Union, should be sought to be impaired by unduly magnifying

mere clerical errors of transcription, which are recognized at once to be only clerical errors due to the inadvertence of some copyist, and which involve no statement of fact that is important to be known. If there is an independent substantial fact to be stated, and such fact is omitted, then undoubtedly the omission is serious; but there is no such omission in the casual exclusion from an entirely good statement of fact of words the effect of which would be only to make the statement more explicit.

But there is another and conclusive answer to the contention of the appellees in this regard. The statute in force in the District of Columbia at the time of the execution of the deed in question, and which is yet in force with some modification not important in this connection, provided that all deeds, except deeds of trust and mortgages, which should be acknowledged and certified according to law and delivered for record within six months after the execution thereof, should be valid against all persons from the time of the acknowledgment, and that deeds of trust and mortgages, so acknowledged, certified, and delivered for record, should take effect against all persons from the time of their delivery for record. Revised Statutes of the United States for the District of Columbia, Sections 446, 447. The deed of trust in the present case was duly acknowledged and certified according to law, and was duly delivered for record. By force of the statute it took effect from the time of its delivery for record. From that time it was notice to everyone; and the transcript of it upon the record became notice as soon as it was transcribed. It is the deed itself, and to the transcript thereof, and not to the certificate of acknowledgment, that the statute gives this force and efficacy. It is true that, under the statute, the transcript of a deed is not notice unless there was affixed to the original deed a proper certificate of acknowledgment; but if there was such a certificate affixed to the original deed, whether the certificate itself has been correctly tran-

11 Ct. App.—10

scribed on the recorder's books or not, or even if the recorder has wholly failed to transcribe the certificate, the statute at once, upon the delivery of the deed to the recorder for record, gives to it the force of notice to all the world.

Of course, a defective transcript of a certificate of acknowledgment, or a correct transcript of a defective certificate, will not authorize the accompanying transcript of a deed to be read in evidence, or even to avail as notice to subsequent purchasers. What the statute purports to effect is, that if the original deed has affixed to it a proper certificate, and such fact appears in due course of proceedings, the record is then available as evidence, and is notice to all persons dealing with the property purporting to be conveyed by it. If they assume that an apparently defective transcript of the certificate correctly represents the original, they must take the risk of error in the transcription. The defect, at best, is no more than a technical one, which may not be sustained by the actual facts and the original documents when produced.

The appellee, Richard T. Boarman, testifies that he did not examine the land records at all, or cause any examination of them to be made, at the time of his purchase from his brother. But if he failed to take the ordinary precautions usual in such cases, he must be charged with the consequences of his risk. He had the opportunity for investigation; and we must hold him chargeable with notice of the existing deed of trust at the time at which he purchased from his brother, and to have purchased the property subject to that deed.

5. What we have just said in reference to the efficacy of the deed of trust given by John H. Boarman as superior to the title subsequently conveyed by him to his brother, Richard T. Boarman, must dispose of the dower interest claimed by Mrs. Lizzie Boarman, the wife of the latter, so far as concerns the interest conveyed by John H. Boarman. The inchoate dower interest of the wife, if it existed at all in the

case, could not be broader than the estate of the husband upon which it depends. In the property covered by the deed of trust it must be held to be subordinate to the rights of the appellant under that deed.

6. The appellant is not entitled to have any partition, as prayed for by him in his amended bills. Partition, or sale for the purpose of partition, is allowed only to him who has an estate in the property sought to be partitioned or sold. A mortgagee out of possession and before foreclosure has no such estate in him; his interest in that regard is no more than a lien. Story's Eq. Jur., Vol. 1, Secs. 646, 650, and notes; *Norcross* v. *Norcross*, 105 Mass. 265; *Brownell* v. *Brownell*, 19 Wend. 267. No one is entitled to maintain partition who has not an estate that entitles him to immediate possession.

Much less is the beneficiary under a deed of trust entitled to have partition; for he has no estate whatever, and no possibility even of a right of possession. Nor has the trustee in the deed any such right, for his trust is specifically limited to a right of sale upon a certain specified contingency.

The appellant is entitled to have his deed of trust enforced against the interest in the real estate specified which was conveyed by John H. Boarman to Richard R. Crawford. If that interest should be sold, the purchaser may maintain a suit for partition; for that purchaser will have acquired an estate that will entitle him to partition, or to a sale for the purpose of partition. But until a sale is had and an indefeasible estate acquired, there is no right of partition.

From what we have said, it results that, in our opinion, the appellant is entitled to a decree in his favor for the sale of the interest conveyed by the deed of trust of John H. Boarman; and that, therefore, the decree of the Supreme Court of the District of Columbia, dismissing the appellant's bill of complaint, and from which the present appeal has been prosecuted, should be *reversed, with costs. The cause will accordingly be remanded to that court, with directions to vacate*

*its decree in the premises, and to enter a decree therein in accordance with this opinion; and for such further proceedings according to law as may be just and proper. And it is so ordered.*