# KIDWELL *v*. WHITE.

EQUITY; DEEDS; MORTGAGES; ACCOUNTING; USURY.

1. Where a conveyance absolute on its face is made merely for the purpose of securing a loan or contemporaneous debt, a court of equity will disregard the mere form of the instrument, and will look to the intent of the parties. (Following *Brown* v. *Hight*, 33 App. D. C. 260.)

2. Where the owner of a lot, after selling it on small monthly payments, makes a loan to the purchaser for the purpose of building a house on the lot, and thereafter advances an additional sum in order to complete the house, taking an absolute deed from the purchaser and giving him a rental agreement, and, two days after the last transaction, credits on a passbook which he had issued to the purchaser a payment on account of the original purchase price of the lot, and thereafter delivers a statement of account to the purchaser in which he charges the latter with the last amount advanced as a loan and shows the balance due on the lot and on both loans, the deed will be held to be a mortgage; and in case of a sale of the property by the grantee he will be required to account to the grantor for the proceeds of sale; and on the accounting the grantee will not be permitted to dispute the correctness of such statement of account.

3. Where the seller of a suburban lot advances to the purchaser $400 for the purpose of building a house on the lot, and takes from him a promissory note for $475, claiming that the difference of $75 was for the expense of making the loan, superintending the building, and seeing that proper materials were furnished and the house properly constructed, for the protection of the loan, it was *held* that on an accounting between the parties the $75 should be taken as usury charged by the seller.

No. 2891. Submitted February 9, 1916. Decided April 3, 1916.

Note.—On parol evidence that a written instrument which on its face imports a complete transfer of a legal or equitable estate or interest in property was intended to operate as a mortgage, see note in L.R.A.1916B, 18.

HEARING on an appeal by the plaintiff from a decree of the Supreme Court of the District of Columbia dismissing a bill for an accounting.                                    *Reversed.*

The COURT in the opinion stated the facts as follows:

This appeal is from a decree in equity of the supreme court of the District of Columbia dismissing the bill of appellant, Richard Kidwell, plaintiff below, wherein an accounting was sought against defendant, Robinson White, for money claimed to be due from the sale of certain real estate.

It appears that on September 16, 1912, plaintiff entered into a contract with defendant for the purchase of two lots, wherein he stipulated to pay the sum of $250, payable $10 in cash, "and the balance of $240 in equal monthly instalments of $6 per month thereafter until the whole amount of the purchase money shall be paid." The contract contained a forfeiture clause providing that, should the purchaser "fail, neglect, or refuse to make his payments as above stipulated, and shall be and become in arrears on said payments for three months, or shall violate any of the terms or conditions of sale herein specified, then this contract of sale shall be and become at once null and void, and all payments made by the said purchaser are to be forfeited" as liquidated damages.

Defendant, the vendor, agreed to execute to plaintiff a warranty deed for the premises upon payment of the whole of the purchase money. The contract appears in the form of a booklet or "passbook" containing blank spaces for the crediting of payments. It shows payments as follows:

"September 16, 1912 ........................... $10.00
October 24, 1912 .............................   6.00
January 3, 1913 ..............................   6.00
February 21, 1913 ............................  18.00"

Plaintiff proceeded to erect a house on the premises. After the foundation was laid and a portion of the frame erected, he applied to defendant for a loan of $400, which was made. As to this transaction, defendant testified that plaintiff "said

he had some material, but it would be necessary to make a loan in order to get sufficient money to build the house. Borrowed $475. Deducted $75 for expense of the loan and superintendence of the building, explained to Kidwell at the time that it would be necessary for me to do this, and would have to see that proper materials were furnished and proper construction made for the protection of the loan, necessitating a great many trips to Fairmont Heights, which is some distance from the city."

To secure this loan, plaintiff gave his note for $475, with interest at 6 per cent, secured by a chattel deed of trust on his personal property, and an assignment of all his interest in the premises. The loan was to be repaid at the rate of $8 per month until the principal and interest were paid. Defendant retained all of the money for the payment of bills for material and labor on the house, except $22.50.

In February, 1913, plaintiff applied to defendant for an additional loan of $100 with which to complete the house. Defendant testified of this transaction as follows: "Kidwell came in and said he must have more money. I declined at first to put any more money in. Kidwell stated that he could not finish the house without additional money. I finally decided to let him have $100 additional. Would not do this until he transferred to me any interest he might have in the property and consented to become my tenant. Explained that if he leased the house, went into it, and paid the amount of rent agreed, $12 a month, and showed his ability to carry out his contract with me, I would credit the amount that he had paid by way of rent on his account on repurchase of the property by him. Kidwell agreed to this."

Accordingly, on February 19, 1913, plaintiff and wife executed a deed to defendant, conveying "in fee simple all of their right, title, interest, and estate of every kind whatsoever" in said premises. Of even date therewith plaintiff leased the premises from month to month at $14 per month, the rent to be applied upon a repurchase of the property. For failure of plaintiff to meet the terms of the lease, defendant, on June 3, 1913, sold

the lots, with the house thereon, for $1,000. This action is for an accounting by defendant to plaintiff for his alleged equity in the amount received by defendant for the property.

*Mr. W. Walton Edwards, Mr. John Ridout,* and *Mr. C. E. Crews* for the appellant.

*Mr. Andrew Wilson* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

The principal question is whether or not the conveyance of February 19, 1913, should be treated as a mortgage. The court below held it to be an absolute conveyance of all the interest of plaintiff, and denied an accounting.

We think this conveyance must be treated as a mortgage. The law is well settled that where a conveyance, absolute on its face, is made merely for the purpose of securing a loan or contemporaneous debt, a court of equity will disregard the mere form of the instrument, and will look to the intent of the parties. *Russell* v. *Southard,* 12 How. 139, 13 L. ed. 927; *Brown* v. *Hight,* 33 App. D. C. 260; *Brown* v. *Reilly,* 72 Md. 489, 20 Atl. 239; *Artz* v. *Grove,* 21 Md. 456; *Campbell* v. *Dearborn,* 109 Mass. 130, 12 Am. Rep. 671.

What have we here? Plaintiff applied to defendant for a loan,—not to sell his interest in the property. The amount requested—$100—was furnished, and the deed and lease executed. That defendant regarded it as a loan, and the deed as security, conclusively appears from his own conduct. On February 21, 1913, two days after this transaction, he entered a credit in the passbook of $18 on the original purchase price of the lots. This must have been paid from the loan, since it can be accounted for from no other source. The testimony of defendant discloses that plaintiff had paid nothing on the loans or on the rent; that at the time of making this loan the former loan was more than exhausted; that plaintiff, after the cash payment of $10, had personally paid but $6 on the purchase price

of the lots, and that there remained due on the lots after this last credit, $210. It may be here suggested, Why did defendant make this credit on the purchase contract if, as he contends, the deed devested plaintiff of all his interest in the property? Defendant testified that he "had to advance the additional $100 to complete the house," which money he retained for that purpose. If the conveyance was absolute, devesting plaintiff of any further title in the premises, why did the consideration not pass to plaintiff? Why the stipulation that this money be expended for the improvement of the property conveyed? On the theory of defendant, the property was his. He could spend as much or as little as he pleased upon it; yet he considered himself bound to spend the consideration on the house,—the purpose for which plaintiff applied for the loan, and the purpose for which we must hold it was made. It is also significant of defendant's understanding that on March 19, 1913, one month after the execution of the deed, he delivered a statement of account to plaintiff in which he charges him with the $100 item as a loan.

Under the evidence in this case, to deprive plaintiff of his equity in the proceeds of the sale of this property would shock the conscience of a court of equity. Contracts for the purchase of real estate, like the one before us, common in this District, are not overcharged with equity in favor of the purchaser. In fact, the burden usually assumed by him under such a contract is a heavy one, and a court of equity should scrutinize closely such transactions, and lend its strong arm to prevent the almost certain injustice which the enforcement of its penalties and forfeitures inflict.

As to the $75 deducted by defendant from the $475 loan for alleged services in making the loan and looking after the completion of the house, we think, in the circumstances of this case, it should be charged as usury. While there is some conflict as to the amount of service rendered, this method, common among brokers and real estate agents, of exacting exorbitant commissions from borrowers under the pretense of services to be rendered in the future, affords such a convenient avenue through

which to conceal an evasion of the law that, before a court of equity will lend its approval to such a transaction, those claiming its benefits must appear with hands untainted with even the suspicion of usury.

It appears that defendant rendered a statement of account showing the amount claimed to be due him from plaintiff, including interest, on March 19, 1913, as follows:

| | |
|---|---:|
| "Balance on lots | $210.00 |
| Balance on loan No. 1 | 455.00 |
| Balance on loan No. 2 | 100.50 |
| Insurance | 5.00 |
| | $770.50" |

Defendant will be held to this statement, and not now allowed to dispute its correctness. From this amount should be deducted $75, with interest at 6 per cent from October 29, 1912, the date of the $475 loan, to March 19, 1913. Defendant should be allowed interest at the same rate on the balance from March 19, 1913, to June 3, 1913, the date of the sale of the property. Defendant should also be allowed for whatever expense he incurred for labor and materials after March 19, 1913, in putting the property in salable condition. The difference between the amount so found and the selling price of the property represents the equity of plaintiff, for which he should be given a decree, with interest. Counsel for plaintiff generously suggested at bar the willingness of plaintiff, in lieu of the satisfaction of the decree by payment in cash, to accept from defendant an assignment of sufficient number of the last notes becoming due, representing the monthly payments on the purchase price of the property, to satisfy the amount found due under said decree. Defendant should be granted this privilege, if he so elects.

The decree is reversed, with costs, and the cause is remanded for an accounting and decree consistent with this opinion.

*Reversed and remanded.*