# INGERSOLL *v.* TYLER.

---

DEEDS; REDEMPTION OF PROPERTY; BONA FIDE PURCHASER.

1. Where a debtor gave his creditor a deed of trust upon real estate as security for his note, and, being unable to pay it when it became due, delivered an absolute deed of the property to the creditor, with the understanding that it was to be reconveyed to him upon payment of the debt on a sale of the property by him, before a certain time, and the creditor retained the note with the intention of keeping it until he should ascertain, by an examination of the title on a subsequent sale by himself, whether the property had been encumbered between the dates of the trust deed and the absolute deed, and within the time limit the debtor obtained a purchaser for the property, and demanded a reconveyance, which was refused, it was *held* that the debtor was entitled to recover the property upon paying, within a reasonable time, the amount due the creditor, whether the transaction in which the absolute deed was given was considered as resulting in a deed invalid because without consideration, a mortgage, or a conditional sale. (Mr. Justice ROBB dissenting.)

2. One who enters into a contract for the purchase of real property without notice of a claim of a third party is not an innocent purchaser for value, where he does not pay any of the purchase money before notice of such claim, but only makes a deposit, which is to be returned to him in case his vendor is unable to convey a valid title.

No. 3044. Submitted January 7, 1918. Decided February 4, 1918.

HEARING upon an appeal by the plaintiff from a decree of the Supreme Court in an action to set aside an absolute deed to real estate.                     *Reversed and remanded.*

---

NOTE.—For authorities discussing the question as to whether a deed absolute on its face but intended as a mortgage conveys legal title, see note in 11 L.R.A.(N.S.) 209.

On effect of grantee's oral promise to grantor to hold in trust, as giving rise to constructive trust, where conveyance was made as security, see note in 39 L.R.A.(N.S.) 922.

The COURT in the opinion stated the facts as follows:

Mrs. Lalla B. Ingersoll gave to Mr. Cadwell Tyler a deed of trust upon real estate as security for the payment of her note in the sum of $1,100. She, not being able to discharge her obligation when it became due, delivered to Tyler at his request February 13, 1915, an absolute deed of the same property. She says this was done with the understanding that she could have the property back at any time before the following July upon paying what she owed; and if by that time she had not sold it, he would "try and sell it and make a little something out of it for both of us [them]." He did not then surrender to her the note, nor had he done so at the time of the trial. Soon after giving the last deed, Mrs. Ingersoll placed the property in the hands of an agent to sell, and, she testifies, Tyler frequently called upon her to inquire what progress she was making with respect to securing a purchaser. Late in June the same year, she told him at her home that an agent was about to make a sale, and asked him if he would write her something to the effect that he would deed the property back in the event a sale was made. He at once wrote in response this memorandum:

Mrs. Ingersoll:

I will give title to Twentieth street property for $1,425, one thousand four hundred dollars [?], cash.

She claims to have effected a sale to one Hill at a profit to her over what she owed Tyler, the sale contract having been signed by the purchaser before July 1st, and by her on that date. Tyler was at once notified of the sale, but he refused to recognize it and reconvey the property, stating that it was "too late."

Tyler denies that at the time he took the title under the last deed he made the agreement testified to by Mrs. Ingersoll, but admits that just after she had executed the deed he said: "If I make anything on this I will be perfectly willing to give you a part of it." He also admits that he did not then surrender

the note, and that he had it in his possession when testifying at the trial, about a year afterwards. His explanation of this is that he feared that Mrs. Ingersoll, in the interval between the giving of the trust deed and the absolute deed, had placed an encumbrance upon the property, and he wanted to be sure she had not done so before he surrendered the note and canceled the debt. To satisfy him on this point, he asserted: "It would be necessary to have an examination of the property, which would cost money;" and he did not care about incurring the expense until he had sold the property, which he expected to do "right off," when one examination would serve his purpose and the purpose of the purchaser. He admits the giving of the memorandum, ante; also that he said to Mrs. Ingersoll in March or April that he would sell the property back to her if she would pay what she owed, but added that she must do this before July 1st. On a later date he told her that he would give her "until the 1st of July to get rid of the property."

*Mr. Samuel E. Swayze* and *Mr. Wm. G. Johnson,* for the appellant, in their brief cited:

*Palmer* v. *Jewett,* 7 Johns. Ch. 65; *Peugh* v. *Davis,* 96 U. S. 332; *Smith* v. *Orton,* 131 U. S. App. LXXV.; *Starr* v. *Starr,* 1 Ohio, 321; *Villa* v. *Rodriguez,* 12 Wall. 323.

*Mr. Fred S. Swindell, Mr. Mabry C. Van Fleet, Mr. Samuel Maddox,* and *Mr. H. Prescott Gatley,* for the appellees, in their briefs cited:

*Ahern* v. *McCarthy,* 107 Cal. 382; *Broach* v. *Barfield,* 57 Ga. 601; *Burnet* v. *Denniston,* 5 Johns. Ch. 35; *Erickson* v. *Thelin,* — S. D. —, 128 N. W. 598; *Garee* v. *Clements,* 94 Ala. 337; *Re Gompers,* 40 App. D. C. 319; *Gray* v. *Nelson,* 77 Iowa, 63; *Green* v. *Butler,* 26 Cal. 595; *Hicks* v. *Hicks,* 5 Gill & J. 76; *Hicks* v. *Hicks,* — Tex. Civ. App. —, 26 S. W. 227; *Hospes* v. *Bailey,* 28 Miss. 328; *Jones* v. *Porter,* 29 Tex. 456; *Jose Realty Co.* v. *Pavlicevich,* — Cal. —, 130 Pac. 15; *Lewis* v. *McBride,*

— Ala. —, 57 So. 705; *McLarren* v. *McLarren*, 44 Wash. L. Rep. 360; *Peugh* v. *Davis*, 96 U. S. 332, 337; *Re Gompers*, 40 App. D. C. 319; *Sheckel* v. *Hopkins*, 2 Md. Ch. 89; *Shelton* v. *Hampton*, 28 N. C. 216; *Tirrell* v. *Merrill*, 17 Mass. 117; *Villa* v. *Rodriguez*, 12 Wall. 323, 339, 340; *Watson* v. *Edwards*, 105 Cal. 70; *Wilhelmi* v. *Leonard*, 13 Iowa, 330.

Mr. Chief Justice Smyth delivered the opinion of the Court:

The consideration for the absolute deed was the surrender of the note and the cancelation of the debt. This was not done, and hence the deed was without consideration. *Peugh* v. *Davis*, 96 U. S. 332, 24 L. ed. 775. This being so, Tyler holds the title in trust for Mrs. Ingersoll. *Starr* v. *Starr*, 1 Ohio, 321.

Another view of the case: The relation of debtor and creditor continued between the parties. Tyler admits that he refused to cancel the debt until he had learned that she had not encumbered the property subsequently to the giving of the trust deed. The manifest purpose of this was that he might enforce the debt in the event that she had so encumbered the property. The keeping alive of the debt, although not conclusive, is a strong circumstance tending to indicate that the deed was intended as a mortgage. *Ennor* v. *Thompson*, 46 Ill. 214; *Wright* v. *Mahaffey*, 76 Iowa, 96, 40 N. W. 112. In such cases whenever there is doubt, a court of equity will decree the deed to be a mortgage, and preserve to the debtor the right of redemption. *Hickox* v. *Lowe*, 10 Cal. 197; *Russell* v. *Southard*, 12 How. 139, 151, 13 L. ed. 927, 932. In the *Peugh Case*, *supra*, the court held: "It is an established doctrine that a court of equity will treat a deed, absolute in form, as a mortgage, when it is executed as security for a loan of money." And again: "It is also an established doctrine that an equity of redemption is inseparably connected with a mortgage; that is to say, so long as the instrument is one of security, the borrower has in a court of equity a right to redeem the property upon payment of the loan. This right cannot be waived or abandoned by any stipulation of the parties made at the time, even if embodied in the mortgage. This is a doctrine from

which a court of equity never deviates." See also *Conway* v. *Alexander*, 7 Cranch, 218, 236, 3 L. ed. 321, 327; *Babcock* v. *Wyman*, 19 How. 289, 299; *Russell* v. *Southard*, 12 How. 139, 153, 13 L. ed. 927, 933.

Moreover, it might well be said that the transaction between Mrs. Ingersoll and Mr. Tyler on February 13 amounted to a conditional sale. When we consider the testimony of both so far as it harmonizes, and the memorandum which he gave to her in the latter part of June, there can be no doubt that the understanding between them from the beginning was, in effect, that if Mrs. Ingersoll sold the property for more than enough to pay Tyler's debt, he would reconvey it to her or the purchaser, as she might direct. This constitutes a conditional sale. *Conway* v. *Alexander, supra;* 19 R. C. L. sec. 35, p. 266; *Hogan* v. *Jaques,* 19 N. J. Eq. 123, 97 Am. Dec. 644. He admitted on the stand that he agreed *sub silentio,* as well as otherwise, that he would give her "until the 1st of July to get rid of the property." She claims no more. Before July 1st, Hill, a man of substantial financial standing, had signed a contract to purchase the property. This was sufficient to satisfy the condition of the sale.

So, whether we consider the transaction of February 13 as resulting in a deed invalid because without consideration, a mortgage, or a conditional sale, Mrs. Ingersoll is entitled to recover the title upon paying, within a reasonable time, what she owes to Tyler.

We should add, however, that there is nothing in the record which justifies censure of Mr. Tyler's acts. He befriended Mrs. Ingersoll financially when she needed such assistance. The present controversy is due solely to a misapprehension by him of his legal rights.

This leaves only the claim of the intervener, Mr. Dunigan, that he is an innocent purchaser from Tyler, to be disposed of. It presents no difficulties. He says that on July 1, 1915, the day after Mrs. Ingersoll had sold the property to Hill, he entered into a contract with Tyler to purchase the same property for $1,525 cash and assume a mortgage thereon for $4,000; and that he deposited with Mr. Tyler $100 as earnest money,

which the latter was to return to him in case he, Tyler, was unable to convey a valid title. Thus he is in the attitude of one who had paid no part of the purchase money. It is elementary that under such circumstances he cannot be considered as an innocent purchaser for value. In order that he might bring himself within the rule which protects such a purchaser, it was necessary for him to aver and prove "that the conveyance was by deed, and that the vendor was seized of the legal title; that all the purchase money was paid and paid before notice. There must not only be a distinct denial of notice before the purchase, but a denial of notice before payment. Even if the purchase money had been secured to be paid, yet if it be not, in fact, paid before notice, the plea of purchase for a valuable consideration will be overruled." *Smith* v. *Orton*, 131 U. S. Appx. lxxv., lxxviii., and 18 L. ed. 62, 64, citing many cases. See also *Wright-Blodgett Co.* v. *United States*. 236 U. S. 397, 403, 59 L. ed. 637, 640, 35 Sup. Ct. Rep. 339, and decisions therein referred to.

The decree of the lower court, therefore, is reversed at the cost of the appellee, with directions to that court to enter a decree awarding to Mrs. Ingersoll the right to redeem the property within fifty days by paying Mr. Tyler the amount which the court shall find is due to him from her for money loaned and advances of money made on account of the property, with interest; and ordering that, in the event of her redeeming within the time allowed, Tyler shall reconvey to her the property; but in case she fails to redeem within that time, all claims by her against the property shall be canceled and held for naught, and the title to the property quieted in Tyler.

*Reversed.*

Mr. Justice Robb dissenting:

I regret that I am unable to accept my associates' view of this case. Notwithstanding the array of authorities cited in the majority opinion, it is largely a question of fact, and the trial justice, whose opportunity for observing the witnesses and

weighing their testimony was far better than ours, found in favor of the appellees.

There was a first mortgage on the property in question and Mrs. Ingersoll held a second mortgage. The property was sold under the first mortgage and bid in by the mortgagee. It then stood the mortgagee $5,100, and was offered to Mrs. Ingersoll for that amount. She found she could raise $4,000 on first mortgage. As to the balance, she might have raised this upon other property owned by her, but was unwilling to encumber it, and finally prevailed upon her friend Mr. Tyler to advance the required $1,100 on second mortgage. Since $5,100 then was the fair value of the property, it is apparent, I think, that Mr. Tyler's act was prompted solely by a desire to aid this lady. In other words, there was no hope of gain, but, on the contrary, risk of loss.

Mrs. Ingersoll finally became in arrears on both interest payments and taxes, and the situation reached an acute stage. It was under these circumstances that she made the deed to Mr. Tyler. She testified that Mr. Tyler then said: "Any time *before July* that you want to take it back you can have it for exactly what it costs me to carry it; * * * He said if I could not do anything with it *before July* he would try to sell it and make something out of it for both of us; and I said: 'No, if I cannot do anything with it by July, I will have nothing more to do with it, and you can have it absolutely.'" Mr. Tyler testified that when Mrs. Ingersoll came to him $100 was due on the first-mortgage note, $33 on his note, and a year's taxes were in arrears. He finally suggested to her that she sell the property to him, he assuming all accrued charges, and "she said she would be very glad to do it;" that the deed was drawn and acknowledged without any other understanding; that he did say to Mrs. Ingersoll as she was leaving that if he made anything he would be perfectly willing to give her a part of it; but she replied: "I do not want it; I want to get clear of the thing; I want to get entirely clear of it; I do not want anything more to do with it."

Mr. Tyler immediately thereafter placed the property in the hands of a real estate agent for sale, and Mrs. Ingersoll

must have known of this.    That circumstance tends to corroborate Mr. Tyler.    In March Mrs. Ingersoll asked Mr. Tyler whether he would deed back the property to her if she would pay him what it had cost him.    He replied in the affirmative and gave her a memorandum of what it then stood him,— $1,350.    Later, after Mr. Tyler had paid $75 more in taxes, Mrs. Ingersoll asked for another memorandum, and Mr. Tyler then offered to deed the property to her for $1,425, or the amount it then stood him.    Finally, after he had entered into a binding contract with the appellee Dunigan on July 1st, agreeing to deed the property for what it then stood him including the agent's commission, Mrs. Ingersoll, on the evening of that day, requested Mr. Tyler to deed it to her and was informed that she was too late.

Having in mind that this is a deed absolute in terms (see *Marden* v. *Hopkins, ante,* 202; *Newman* v. *Baker,* 10 App. D. C. 187; *Bieber* v. *Gans.* 24 App. D. C. 517), and also having in mind the surrounding circumstances, I agree with the learned trial justice that Mrs. Ingersoll is mistaken when she says that Mr. Tyler agreed to hold the property for her.    But, even assuming that he had intimated a willingness to deed to any purchaser secured by her before July, she is in no better position, for her purchaser was not secured before July.

The majority opinion makes much of Mr. Tyler's failure to surrender the second-mortgage note when Mrs. Ingersoll deeded him the property.    In the circumstances, I think Mr. Tyler was entirely justified in withholding the note until he could be certain that no other encumbrance had been placed upon the property.    An immediate sale of the property was contemplated, when a search of the title would be necessary.    Knowing this, Mr. Tyler was trying to save the expense of an additional search.

In my view the decree below should be affirmed.

A motion for reargument was denied on February 16, 1918.