John F. DAVIS and Alberta A. Jackson Davis, also known as Alberta A. Jackson, individually and as trustee, Plaintiffs,

v.

M. X. STONE, Defendant.

Civ. A. No. 1437–63.

United States District Court
District of Columbia.

Dec. 7, 1964.

Charles Sumner Brown, Washington, D. C., for plaintiffs.

Marshall P. Johnson and Edwin Shelton, Washington, D. C., for defendant.

KEECH, District Judge.

This is an action in equity by John F. Davis and Alberta A. Jackson Davis, his wife, to have certain deeds conveying realty to defendant, M. X. Stone, declared equitable mortgages, and for an accounting.

On June 26, 1953, and July 9, 1953, respectively, plaintiffs purchased two properties, 5017—5th Street, N. W., in the name of Mrs. Davis, and 4310—4th Street, N. W., in the name of Mr. Davis. The 5th Street property was subject to a first trust securing a note for $9,052.47, and the 4th Street property was subject to a first trust of $9,000.00. To make the purchase, plaintiffs also gave the seller a second trust note for $5,450.00 on each property. These second trust notes were subsequently sold by the seller to the defendant, Stone.

By March, 1959, plaintiffs were in default on the first and second trust payments on both properties, and were in arrears on taxes. In lieu of foreclosure, however, defendant Stone and plaintiffs Mr. and Mrs. Davis, on March 20, 1959, entered into an agreement:

"* * * whereby the parties of the first part [plaintiffs] do convey in fee simple real properties known as * * * 4310—4th St., N.W.; * * * 5017—5th St., N.W. to the party of the second part to be held by the party of the second part, his heirs or assigns, until all monies advanced by the party of the second part for delinquent payment on first trust, second trust on above described properties and taxes has been reimbursed, the same to be paid within one year or less at tye [sic] rate of one hundred dollars per week.

"It is agreed that any one payment in default voids this agreement and all payments forfeited. It is further agreed that upon final payment of this obligation the party of the second part will reconvey the above described properties in fee simple to the parties of the first part, their heirs or assigns.

"It is further agreed that first and second trust and taxes shall be kept current from the payments mentioned at the rate of $67.50 on each first and $41.00 on each second trust and taxes."

Accordingly, deeds to these properties were executed by the proper parties, dated March 19, and notarized March 20, 1959. Defendant Stone thereafter made the payments on the first trust, although tardily, and made certain payments on account of the taxes. Plaintiff John F. Davis continued to collect rents from the properties, and made certain payments in accordance with the agreement, until December 10, 1959, after which he again defaulted. Amounts paid by defendant on the first trust and on the tax accounts

were added to the balance due on the second trust notes, and payments which plaintiff made were credited on these notes and marked in the second trust payment books.

Beginning in August, 1959, Stone filed a series of landlord and tenant actions in the Municipal Court for the District of Columbia against plaintiff John F. Davis, for rent due and possession of the two properties. In February, 1960, Stone filed an action for $614.00 rent due. Since February, 1960, plaintiffs have been out of possession of both properties. This action was filed June 6, 1963.

█ It has been pointed out by no less authority than Chief Justice Marshall that neither the policy nor the letter of the law prohibits the sale of property with the right to repurchase reserved to the vendor. Conway's Executors and Devisees v. Alexander, 7 Cranch 218, 237, 11 U.S. 218, 237, 3 L.Ed. 321 (1812). That a mortgagor may convey his equity of redemption to the mortgagee in satisfaction of a debt is also well established. See Coster v. Arrow Building & Loan Association, Inc., 184 Md. 342, 41 A.2d 83 (1945). But courts of equity will carefully scrutinize such a transaction between mortgagor and mortgagee, to determine what was really intended. The policy of the law will not permit the conversion of a mortgage into a sale, and, because of the debtor's relative position, doubtful cases will be construed as mortgages. Peugh v. Davis, 96 U.S. 332, 337, 24 L.Ed. 775 (1877); Conway's Executors and Devisees v. Alexander, supra, 7 Cranch at page 237, 11 U.S. at page 237, 3 L.Ed. 321.

██ In these cases in which the mortgagor transfers to the mortgagee with a condition of defeasance reserved to the mortgagor, all the authorities agree that the test by which to determine whether the transaction is intended as a mortgage or as a sale is whether or not a personal debt is created or continues to exist. Dollar v. Land, 87 U.S. App.D.C. 214, 223, 184 F.2d 245, 253, cert. denied 340 U.S. 884, 71 S.Ct. 198, 95 L.Ed. 641 (1950); Thomas v. Klemm,

185 Md. 136, 43 A.2d 193, 196 (1945); 1 Jones Mortgages §§ 317, 318 (8th ed., 1928); 9 Thompson, Real Property § 4738 (perm. ed. rev. repl. 1958). This test applies even where the conveyance is in lieu of foreclosure. No consideration of law or public policy prevents a transfer of mortgaged property to the mortgagee in satisfaction of the debt, but the debt must be cancelled thereby. 9 Thompson, op. cit. supra, § 4738.

█ The presumption is that a deed is what it purports to be on its face, and one who seeks to establish the contrary has the burden of doing so by clear and convincing evidence. But the condition of defeasance and creation or subsistence of a debt need not be on the face of the deed, but may be established by contemporaneous agreement. 9 Thompson, op. cit. supra, § 4735.

In the instant case, the court finds that there was no cancellation of the debt, but that the Davises continued to be indebted to Stone after delivery of the deeds.

█ Where evidence of the debt is retained by the grantee, the continued existence of the debt is presumed. 1 Jones, op. cit. supra, § 320. But there is no need here to resort to presumptions. Not only did the grantee retain the notes evidencing the grantors' obligations, but he continued to record Davis's payments on the second trust note itself as well as in the payment book incident to this note. See Kidwell v. White, 44 App.D.C. 600 (1916). There was no notation on either the notes or the payment books of any cancellation or reduction of the debt on account of the transfer of the property. The only consideration on the face of the deed was ten dollars. Moreover, the intent to secure rather than cancel the existing debt, or to create a new one, is evident from the face of the agreement signed contemporaneously with the delivery of the deeds. The transfer is there limited, i. e., it is made only " * * * until all monies advanced by the party of the second part for delinquent payment on first trust, second trust on above described properties and taxes has been reimbursed, * * *.

\* \* \* It is further agreed that upon final payment of this obligation the party of the second part will reconvey the above described properties in fee simple \* \* \*." In conformance with this intent, plaintiffs remained in possession of the properties until they defaulted, almost a year after the transfer.

Ingersoll v. Tyler, 47 App.D.C. 328, 331 (1918), suggests that the keeping alive of the debt is not conclusive, but only a strong indication of an intended mortgage. This court, however, believes that it is controlling in view of the language in Dollar v. Land, supra, and practically unanimous authority elsewhere. This is especially true where there is no other sufficient consideration. In any event, the continuation or creation of a debt requires the grantee to show that the transaction was in fact a sale. This has not been done.

The court finds that the two deeds must be construed as mortgages when read in the light of the agreement of March 20, 1959, and the actions of the parties thereto. The agreement is equivocal in terms. Neither it nor the testimony in the case indicates an intention on the part of the plaintiffs or defendant to extinguish the existing indebtedness of the plaintiffs, or that the agreement and deeds were to be in satisfaction of the existing indebtedness. Defendant Stone had possession of the two second trust notes and the two second deeds of trust continuously, and still possessed them at the time of trial. The notes were not marked cancelled, and furthermore no releases of the two second trusts had been executed or recorded. Intent to pay existing debt by deed may not be inferred where the creditor retains the evidence of indebtedness and security pledged for payment. Healy v. Metropolitan Life Ins. Co., 325 Ill.App. 697, 60 N.E.2d 647. There is a strong presumption, where a deed is received for an outstanding debt and the creditor retains the written evidence of the debt in his possession without cancellation, that the conveyance did not extinguish the deed. Jones on Mortgages, Vol. 1, page 400. This finding does not divest defendant of his (conceded) right to be made whole. Defendant still has the right to look for satisfaction of plaintiffs' obligation to the two second deed of trust notes and, if need there be, to foreclose under the two second deeds of trust. All of these documents are in defendant's possession uncancelled, and the deeds of trust are still of record.

Defendant claims that plaintiffs are barred by the statute of limitations and by laches. While courts of equity are not bound by statutes of limitations, Calvin v. Rafferty, 94 U.S.App. D.C. 60, 214 F.2d 230 (1954), they will ordinarily observe the limitations applicable to equivalent actions at law. In actions to have an absolute deed declared a mortgage, courts of equity generally apply the limitations applicable to a suit to redeem. The right to foreclose a mortgage and the right to redeem are reciprocal, and, if the right of the grantee to foreclose on the mortgage is barred, the right of the grantor to have the deed declared a mortgage and redeem therefrom is likewise barred. 36 Am.Jur., Mortgages § 131 (1941); Annotation, 28 A.L.R. 554, 561 (1924). There is no specific statute of limitations on the foreclosure or redemption of a mortgage in the District of Columbia, but the limitation applicable to the recovery of land is applied. See Talbott v. Hill et al., 49 App.D.C. 96, 261 F. 244 (1919); Sis v. Boarman, 11 App.D.C. 116 (1897). Accord, Campbell v. Ohio National Life Ins. Co., 161 Neb. 653, 74 N.W.2d 546, 557 (1956); 1 Jones, op. cit. supra, § 404; 36 Am.Jur., op. cit. supra, § 131. This is fifteen years. D.C.Code § 12–301(1) (1964 Supp.). Defendant cites Filson et al. v. Fountain et al., 90 U.S.App.D.C. 273, 197 F.2d 383 (1952), wherein the statute of limitations for simple indebtedness was applied to an action for recovery of plaintiffs' equity of redemption arising out of a deed and option to repurchase alleged to constitute a mortgage. But in that case the relief sought

was within the concurrent jurisdiction of law and equity, if it was not purely legal. Id., at p. 274, 197 F.2d 383.

■ Mere lapse of time is not enough to establish laches. Defendant must show some prejudice thereby. The record shows none.

■ Assuming that the right of the defendant to recover on the debt has been barred by the statute of limitations, it does not follow that the defendant would be without the right to proceed to foreclose on the deeds of trust, for the period of limitation thereon had not elapsed. The sole possible loss, therefore, to defendant would be as to any deficiency in the event of foreclosure under the deeds of trust. This is theoretical, as there is no claim there would be a deficiency, and further, by bringing this action the plaintiffs have impliedly, at least, waived their right to assert the statute of limitations as to the notes should need come for action thereon. There is, however, no problem here, for the plaintiffs have conceded the indebtedness and right to proceed under the deeds of trust. Having come into equity to seek relief from the two documents purporting on their face to vest fee simple titles in the defendant by having them declared to be mortgages, it follows, under the equitable maxim that he who seeks equity must do equity, that the plaintiffs would be estopped to assert the statute of limitations as a bar to any deficiency.

Any possible prejudice resulting from the entry of defendant (as purported owner in fee of the two properties under consideration) into the agreements of April 27, 1960 (monthly tenancy agreement), and August 10, 1961 (agreement providing for monthly payments with right to have property deeded to tenant if payments for twenty months paid up to date), cannot be charged to plaintiffs. Furthermore, the record fails to disclose any facts from which it may be concluded that plaintiffs' failure to bring their action at an earlier date has worked to the prejudice of defendant.

Thus neither the defense of the statute of limitations nor laches constitutes a bar to the plaintiffs' action.

It follows, therefore, that the documents, which on their face purport to convey to the defendant fee simple titles to the two properties, should be declared to be mortgages.

■ The court finds further that an accounting should be had and that the plaintiffs are entitled to credit for all rents collected by defendant and all payments made by plaintiffs under the agreement of March 20, 1959, and the defendant to offset against such credits all payments made by him on the first trust notes and taxes with interest thereon from date of payment.

It is therefore, this 7th day of December, 1964,

Ordered (1) that the documents of March 20, 1959, insofar as they purport to grant fee simple titles to the two properties herein involved, be and the same are hereby cancelled, and further, that said documents be and the same are hereby declared to be mortgages, and (2) that an accounting be and the same is hereby granted in accordance with the formula hereinbefore set forth.

This memorandum may be used in lieu of findings of fact and conclusions of law.